MASON MEAD and Wife *v.* STEPHEN BYINGTON and DANIEL
MARSH, administrators of the estate of JARED BYINGTON.

> No allowance can be made, under the Probate act of 1821, to an adminis-
> trator, for the support of members of the intestate's family, who are over
> seven years of age.
>
> An administrator, who sells personal estate, either at public or private sale,
> without an order from the Probate Court, will not be held responsible
> for losses, if he acts in good faith.
>
> An administrator, who is a surviving partner of the intestate, if he inven-
> tory the intestate's interest in the partnership effects, and pay the debts
> against the partnership, after the commission of insolvency has closed,
> may be allowed to charge the half of such payment, against the proper-
> ty thus charged to himself in the inventory.
>
> An administrator cannot become the purchaser of the estate of the intes-
> tate, for his own benefit, against the will of those, for whose interest he
> is appointed to act.

THIS was an appeal from a decision of the Probate Court,
for the district of Chittenden, accepting the report of the
doings of Stephen Byington and Daniel Marsh, administra-
tors of the estate of Jared Byington, deceased, under a war-
rant to them directed, by said Probate Court, for the sale of
the real estate of said deceased, and also, from a decision
of said Probate Court, allowing the said Stephen's and Dan-
iel's administration account, which appeal was taken by
Mason Mead and Clarissa, his wife, who were interested in
the estate of the deceased.

At the January Term of this court, 1837, Heman Allen
and Martin Chittenden were appointed commissioners, to
state the account of the said administrators, and made their
report at the present term, from which it appears that the
commissioners charged the administrators with items amoun-
ting to $3,238,42, and, among the items so charged, was the
following.  " Sum received on sale of 50 acres of land,
$800,00." The commissioners allowed credits to the admin-
istrators, amounting to $3053,11, and among the items ma-
king that sum, were the following. " Support of family, pre-
vious to setting off dower.                                    $77,37

    Loss on sale of personal property,                 61,27

    Sums paid by administrators, being half of
debts due from the deceased and Stephen
Byington, as partners, not presented to com-
missioners of insolvency,                                      78,49."

    The commissioners further reported, that an order issued

from the Probate Court, on the 22d day of March, 1829, for the sale of so much of the real estate of the deceased, at public auction or private sale, as would be sufficient to pay so much of the debts of the deceased, as the personal estate was insufficient to pay ; that it did not appear that any notice was given to the heirs, of the application for an order to sell the real estate, other than the recital in the probate records "that the heirs and their guardians have been duly notified;" that soon after obtaining said order, the administrators proceded to advertise, agreeably to the directions contained in said order, the time and place of the sale, and that for want of bidders, the sale was adjourned from time to time, but also for want of bidders, no sale was made at any of the regular adjournments; that no further proceedings were had under said order until a short time previous to the 10th day of March 1832, when a further advertisement of the time and place of sale was made, in a newspaper, and by posting up notices thereof, agreeably to the directions contained in the order of sale ; that after adjournments for want of bidders, down to the said 10th day of March 1832, a sale of fifty acres of the land was made to Stephen Byington, (one of the administrators) he being the highest bidder ; that the proceedings of the administrators were marked with fairness ; that all was obtained for the land that could be, and that it was sold at its value; that said Stephen had, from the time of said sale, occupied said land, but no deed had ever been given by the administrators to him, or to any other person for him.

The commissioners further reported, relative to the loss on personal property, sold by the administrators, that a part of it was sold at private sale, and the remainder at public auction ; that in all cases the sums obtained for it had been credited to the estate, and that the part, which was sold at private sale, was disposed of at a sum above the value set upon it in the inventory.

The commissioners further, reported, that, for some time previous to the death of Jared Byington, he was in partnership with Stephen Byington, one of the administrators, and at the time of the appraisal of the estate of the intestate, the interest of the intestate in the personal property of the partnership was appraised, and inventoried at half of the

CHITTENDEN, value of the whole partnership property ; that at the time of
January, the death of the said Jared, there were outstanding debts
1838. against the partnership, which were paid by Stephen By-
Mead & Wife ington, the surviving partner, and one half the sum, so paid
v. by the said Stephen, is $78,49 ; that the claims against the
Byington & partnership were not presented to the commissioners of in-
Marsh. solvency, on the estate of the said intestate, and that the
same were paid after their commission expired.         .

It further appeared from the report of the commissioners,
that the family, for the support of which, previous to the
widow's dower being set out, the sum of $77,37 was al-
lowed, consisted of the widow of the intestate, a daughter
of full age, who had constantly resided with her mother, and,
occasionally, other branches of the family, none of whom
were under the age of seven years, and that Mrs. Mead, one
of the appellants, was with them a part of the time.

The appellants excepted to the allowance of the items
above specified, and prayed that the sale of the real estate, by
the administrators, and the report of the commissioners,
might be set aside.         .

*Hyde & Peck*, for appellants.

1. An administrator cannot purchase at his own sale. One,
who is entrusted with the property of another, with a power
of sale, whether such power be delegated by the act of the
party, or derived from authority of law, cannot be a purcha-
ser, either by himself or through the agency of another ; and
those in interest have a right to set such sale aside, without
showing misconduct or fraud.   The reason of the rule is, that
if such purchase were permitted, frauds might be committed,
which no human sagacity could detect, and which nothing
short of an absolute incapacity to purchase can prevent.
The law cures the mischief, by taking away the temptation
to defraud.   Sugd. law of Vendors, 391.   *Davoue* v. *Fan-
ning,* 2 Johns. Chan. C. 252.   *Ex parte Grace*, 1 Bos & Pul.
376.   *Mills* v. *Goodsell*, 5 Conn. R. 474.   1 Mason, 341.
Cox Dig. 48.   *Hapgood* v. *Jennison*, 2 Vt. R. 294.   It is
a principle both of the civil and the common law, that a
bailee, with a power of sale, cannot be a purchaser.   Story
on Bail. 213.   It is a species of fraud in law.

2. This rule being founded upon the broad principles of
human action, the propriety of its application to administra-

tors cannot be doubted.  By the civil law, it applied to all <span>C HITTENDEN,</span> persons intrusted with the sale of another's property, wheth- <span>January, 1838.</span> er public officers or private agents, and to all sales, whether <span>Mead & Wife</span> public or private, judicial or otherwise.  2 Johns. Ch. C., <span>v.</span> 270, and cases there cited.  8 Brown, P. C.  *The York Build-* <span>Byington & Marsh.</span> *ings Co.* v. *Mackenzie.* It is a rule at law as well as in chancery, and the reasons seem to be stronger at law than in chancery, since courts of law have less powers and facilities of detecting actual fraud.  Every possible guard against fraud ought to be applied to administrators, as those who are interested are generally infants, who are incapable of protecting their rights, and whose interest the law regards with watchful care.  4 Binn. 31, 35, 43.

3. There is also a technical objection in the present case. The administrator having purchased in person, the contract is not only void for want of parties, but no title is, or can be perfected, as a deed from Stephen Byington to himself would be a nullity on the face of it. 3 Binn. 54.  Coke Litt. 113.

The item of $78,49 ought to be rejected, being for the payment of claims not allowed before the commissioners. Byington, as partner, ought to have paid the claims, and presented the matter to the commissioners, or procured the creditors to do the same.  Had some person, other than a partner, taken out administration, he would not have been allowed to pay such claims, and the partner being administrator cannot vary the principle.

The item of $77,37, for support of the family, ought not to be allowed.  Such expenditures are not authorized by the statute, except in case of minor children, under seven years of age.  The support of the widow is a matter embraced in the discretion of the judge of probate, in setting to her the personal estate, which in this case was exercised.

As to the item of $61, 27, it is insisted that the administrator is bound to account for the personal property at the appraisal, or sell under an order of court, which in this case was not done.

*C. Adams,* for defendant.

Probate Courts, and this court as the Supreme Probate Court, are courts of inferior and limited jurisdiction, having no chancery powers, nor any authority to determine as to the validity of a deed by the administrators.

CHITTENDEN,
January,
1838.

Mead & Wife
v.
Byington &
Marsh.

The administrator has a right to become a purchaser at the sale under the order of the probate court. It is certain that this has been the long established practice in this state, and no evil has resulted from it. He is sworn to use his best endeavors to sell to the best advantage, and, if willing to pay more than any other bidder, would seem to be required to become a purchaser.

The only question, then, on this point, is, whether the administrators have acted in good faith. The referees have found that these proceedings were marked with fairness, and that the land was sold for its full value.

If the administrators are to be regarded as trustees strictly so called, then the whole subject should be referred to the Chancery side of this Court.

It is admitted that courts of chancery, in the exercise of their high powers over trusts and trustees, will not allow any advantage to be gained by a purchase of the trust estate. But this is not on the ground that the purchase is void, for purchases by trustees have frequently been confirmed. *Coles* v. *Trecothick*, 9 Ves. 235. *Morse* v. *Royal*, 12 do. 355. *Ex parte James*, 8 do. 337. *Ex parte Bennett*, 11 do. 381. *Bergen* v. *Bennett*, 1 Caines' C. 19,-20. *Monroe* v. *Allaire*, 2 do. 185.

"It is a perversion of the rule, to say that no trustee "should buy." *Whitchcote* v. *Lawrence*, 3 Ves. 740. *Campbell* v. *Walker*, 5 do. 678.

The principle, on which Chancery interferes, is, that the legal estate is in the trustee. Where the purchase, therefore, is beneficial to the *cestui que trust*, it will not be disturbed, but when it is not, Chancery will order a re-sale and order the gain to be paid to the *cestui que trust*. If, on being put up, it will bring no more than the trustee paid, the legal estate is allowed to remain.

When the land has been sold, before the bill brought, the trustee is ordered to hold the amount gained as trustee for those interested, thus again confirming the title. *Fox* v. *Mackreth*, 2 Bro. C. C. 400, *Ex parte Lacy*, 6 Ves. 617. *Lister* v. *Lister*, 6 do. 617. *Ex parte Bennett*, 10 do. 381.

If the purchase was void, the trustee would be without remedy for the purchase money. But Chancery, not only

allows the claim for the money paid for the purchase, but allows for improvement. *Ex parte Hughes,* 6 Ves. 617. *Lister* v. *Lister,* do. 617. *Ex parte Bennett,* 10 do. 381. *Davoue* v. *Fanning,* 2 J. C. R. 252.

The opinion of the court was delivered by

ROYCE, J.—This case is presented on exceptions to the report of commissioners, appointed to take and state an adminstrator's account.

The exceptions are—first,

To the allowance of $77.37 for support of the widow and family, before the dower was set out.

It may have been customary to make allowances of this description, but the statute, in terms, extends only to the support of children under a certain age. And the court of probate is authorised to assign a portion of the personal estate to the widow for her support. No duty of this kind is imposed on the administrator, by statute, and as expenditures of this sort are liable to be carried to a wasteful extent, we think it better to abide by the statute according to its terms, than to authorise an implied power in the administrator, to apply the assets to such a purpose. A second exception is made to the allowance of $61.27 for losses on personal property. The administrator is entitled to an order of the probate court to sell at public or private sale, yet we do not think such order indispensable to his protection against losses, if he acts with due judgment and discretion, and in good faith. If he so acts, it must be indifferent to the estate whether he sells at private sale with or without an order for that purpose. Private sales, made in good faith, are almost always more beneficial to the estate than forced sales at auction. As these administrators appear from the report to have realized and credited all that could be obtained for the property, we think this item should be allowed.

A further exception is taken to the allowance of $78,49, paid on claims not presented to the commissioners. This charge is legalized by the facts disclosed in the report. One of the administrators, being a surviving partner of the intestate, was personally liable for the debts in question and had a right to retain the partnership effects, to meet them. But having consented to bring those effects, at half their value, into the inventory, which included the property of the estate, and having paid these debts after the commission closed, he should be

*Margin:* CHITTENDEN, January, 1838.

Mead & Wife v. Byington & Marsh.

CHITTENDEN, allowed to charge the debts against the property charged
January, 1838. in the inventory, against himself.

Mead & wife        There is also an exception to the credit of $800, for real
v. estate sold to S. Byington, one of the administrators. This
Byington & sale is shown by the report to have been made in good faith,
Marsh. and for the fair value of the land. In strict justice, therefore, no
objection is shown against it, except what arises from the dif-
ficulty of perfecting the title under it. And that is a difficulty,
which the administrator is willing to encounter, and therefore
has little or no force when urged by the heirs.

But it is a principle of settled policy, that no administrator or
person, standing in a like situation, shall become the purchaser
of the estate for his own benefit, against the will of those,
for whose interest he is appointed to act. It is, therefore, a
general rule that a *cestui que trust* has an election to affirm or
disaffirm such purchases by his trustee. *Hapgood* v. *Jenison
et al.* 2 Vt. R. 299. In that case Hutchinson J. says, there is
no doubt of this right. It was also recognized in *Robinson* v.
*Robinson*, Bennington County, 1831, and said in 5 Con. R.
*Mills* v. *Goodsell*, that it is of no importance whether the
sale was fair or not.

Nothing is disclosed, which in our opinion should bring this
case within the few exceptions which may have been allowed
to the rule. And as the heirs insist on vacating the purchase,
they must be indulged ; subject however. to any just lien,
which the administrator may have acquired in the course of a
due administration, by payment of debts or otherwise.

As to the first and last items excepted to, the report is set
aside, and the account will be recommitted, unless otherwise
agreed.