CLARKE H. CHAPMAN *v.* HEMAN H. COMINGS.

[IN CHANCERY.]

*Administrator. Contract. Chancery.*

An administrator cannot purchase a debt due the estate without the consent of those interested in the estate. If he does, they may repudiate the sale, or treat it as valid and keep the avails of it.

An administrator having purchased a debt against the estate at a legal sale, under an agreement between himself and the debtor to share in the difference between the purchase price and face of the debt, the contract was valid between them, and the purchase operated to pay the debt to the extent of one half said difference.

A subsequent agreement between them that, if the debtor should pay the debt at a time named, he was to have the benefit of one half said difference, otherwise he should pay the face of the debt, *held* not binding, because it was either an agreement for an extension, the consideration of which was usurious, or there was no consideration for the promise.

PETITION, to foreclose a mortgage. The cause was referred to a master in chancery to find what was equitably due on the mort-

gage.   At the December term, 1869, BARRETT, Chancellor, the master reported in substance as follows:

That the sum claimed as due by the orator from Comings the defendant, on his mortgage, October 19th, 1869, is $590.70.   This is the correct sum called for by the notes and mortgage.   The defendant insists that he is equitably entitled to the allowance of the sum of $223.85 at the date of the sale hereafter named.   The notes and mortgage here in suit originally belonged to one Jacob B. Merrick of Massachusetts.   Merrick died in Massachusetts, in 1863, and the orator was appointed administrator on his estate in this state by the probate court of the District of Windsor, and as such administrator said notes and mortgage came into his hands. In settling said estate, the notes aforesaid were, with said mortgage, sold at auction.   Previous to the sale, the defendant and the orator made a contract by parol, that the orator should bid off said notes and mortgage, and if the same were thus sold for less than their terms claimed and less than was actually due thereon, the said orator and defendant were to share equally in the difference.   The auction was regular and in pursuance of an order of the probate court aforesaid, and the said notes and mortgage were bid off by the orator in pursuance of said agreement at $1000, being $447.90 less than the sum actually due thereon, one half of which, viz., $223.85, being the sum aforesaid which the defendant claims should be deducted from said first mentioned sum of $590.70.   The heirs of said Merrick's estate were notified by the orator of the time of said auction.   There were but three of said heirs, and they were all represented by one in person at said auction.   The orator at that time offered said heirs said notes and mortgage for the same sum he bid them off at, viz., $1000.   Said notes were put in suit by the orator in Windsor county court, pending this bill to foreclose, and from time to time the defendant made payments to the orator during the pendency of said suits at law.   At no time while the orator was the owner of said notes did he claim of the defendant the right to collect of him more than said sum of $1000, and the one half of said sum of $447.90, with costs and interest.   Subsequently and in the month of————, 1869, the orator sold his interest in said notes and mortgage to Charles Amsden, and duly delivered the same to him for the same sum he paid at said auction, adding and including compound interest thereon and the costs that had then been made in both suits, Amsden taking said notes and mortgage at his own risk, subject to all liens on said mortgaged property for taxes or otherwise, and the orator has in fact now no interest in this proceeding, but

the same is wholly in the interest of Amsden. The contract of June 11, 1865, in pencil, hereinafter set forth, was also delivered to said Amsden, and he thereby was entitled to all the legal or equitable interest belonging to the said Chapman as therein stipulated, and bound by its terms to the same extent Chapman was or could be held. At the time of said sale to Amsden, he was fully informed by the orator of the contract between him and the defendant in reference to said deduction of one half. Comings knew at the time he employed Chapman to bid off said claims, that he, Chapman, was administrator on said Merrick's estate. There was a payment of $800, by the defendant, to Amsden after said sale, which was made without any directions being given by Comings how the same should be applied, on debt, or costs, or otherwise.

In the judgment of the master, the orator, had he not sold his interest to Amsden, would in equity be bound by his contract, to allow to the defendant the one half of said sum of $447.90, to be now deducted from the sum apparently due, viz., $223.85, and the interest thereon to the 19th of October, 1869, the costs of the two suits $33,20, and the balance will be $305.03, due on said 19th of October 1869. If Amsden is entitled to the face of the notes and mortgage, the master finds due on said 19th of October, 1869, said sum of $590.70.

The pencil contract above referred to was as follows:

"It is agreed that in the cases of the notes I bought of Jacob B. Merrick's estate now in court, against H. H. Comings, that Col. Comings shall have till January 1, 1869, to pay the notes and costs, and if he does that, in that time, on all the debt I have against him, he is to have the benefit of one half the difference between what I paid for the Merrick note and the amount due on it. If however Col. C. don't pay me all up by January 1, 1869, I am to have judgment for the whole sum on all the notes, and he is to have one year from July 1st, 1868, to redeem the mortgage in the Merrick note case.

Woodstock, June 11, 1868.

H. H. COMINGS,<br>
C. H. CHAPMAN."

The Chancellor on the hearing on said report adjudged that the sum of $590.74 found by the master to be due October 19, 1869, was the sum then due and that the orator have a decree accordingly, from which the defendant appealed.

*John F. Deane,* for the defendant.

*William M. Pingry*, for the orator.

The opinion of the court was delivered by

WHEELER, J.   The defendant had a right to buy in the debt he owed the estate of Merrick, and the mortgage to secure it, and had he done so, as he could not owe himself, the purchase would have extinguished both debt and mortgage.   He also had a right to purchase with Chapman so far as Chapman could purchase an interest in it for himself.   The law would not allow Chapman to purchase it for himself as against the estate of Merrick, of which he was administrator, unless those interested in the estate were willing he should.   They had a right to repudiate the sale, and insist upon keeping the debt and mortgage, or to treat the sale as valid, and take the avails of it.   *Mead* v. *Byington*, 10 Vt., 116.   The reason why Chapman could not purchase it as against the heirs is because it was his duty as administrator to sell for the highest price he could get, and when he became a purchaser he was interested to buy as low as he could, and this interest of his own would or might interfere with the just performance of his duty.   But a purchase for himself and the defendant would create an interest in him only half as great as a purchase for himself alone ; therefore, as a purchase for himself, with the consent of those interested in the estate, would have been valid, *a fortiori*, a purchase for himself and the defendant, with like consent, was valid.   The purchase by Chapman under the arrangement between him and the defendant was a purchase for both, and the defendant became the owner of the debt to the amount of one half the difference between the price of the debt and the face of it ; that is, to the amount of $223.85, and to that extent the debt was extinguished, and he owed Chapman the balance, that is, $1223.85.   As the defendant only owed Chapman the balance of the debt after deducting the defendant's half of the difference between the price and the face of it, the agreement of the 11th June, 1868, amounted to this : that the defendant might have until the 1st January, 1869, in which to pay Chapman what was justly his due, and that if he did not pay by that time, he should pay Chapman $223.85 more than was justly his due.   The only consideration

for this agreement to pay this sum of $223.85 was the giving of time to the defendant for payment of the debt, and if that was a consideration it was an unlawful one, because it was usurious.   If it was not a consideration, then there was none for the agreement. In either event the agreement was not binding, and after the 1st January, 1869, the defendant owed Chapman no more than he did before.· The transfer of the debt and mortgage to Amsden gave him no greater rights than Chapman had, and it is not claimed that it did.

The decree of the court of chancery is reversed, and the case is remanded to that court, with directions to enter a decree of foreclosure for the smaller sum reported by the master, $305.03, due October 19th, 1869, with costs in the court of chancery, except the costs of the reference to the master, deducting the defendant's costs of this court.