## J. F. DONALD *v.* JANE MCWHORTER.

1. EXECUTOR AND ADMINISTRATOR—FUNERAL EXPENSES.—It is the duty of the executor or administrator, to bury the deceased in a manner suitable to his station and estate. Funeral expenses comprehend more than the mere shroud, coffin and grave; and where no injustice is done to creditors, a compliance with the last wishes of the dying, as to the style and character of the funeral, if not extravagant or unreasonable, violates no principle of law.

2. SAME.—Where the deceased had expressed a desire that a tombstone should be erected at his grave, to be paid for out of his effects, and exacted from his step-son (the administrator) a promise that it should be done, the assets of the estate being sufficient for that purpose, and the administrator, out of respect for the memory of the deceased, did accordingly cause to be so erected a suitable monument, to the

Argument for plaintiff in error.

value of $230 ; it was a legitimate expenditure, and he should be allowed the amount in his final settlement with the probate court.

3. Same.—Although the proof shows that the intestate and his wife, both aged and infirm, had lived in the house of his step-son, the administrator, for several years before his death, and had received the kind and unremitting care and attention of himself and wife ; yet, as it fails to show any arrgement that the wife was to receive compensation for her care and attention, the probate court should not allow compensation therefor against the estate.

Error to the probate court of Leake county.   Campbell, J.

The plaintiff in error assigns the following errors :

1. The court below charges the plaintiff with the hire of the negro man, John, from the grant of letters in January, 1860, to the sale in October following, when the inventory and appraisement show that the negro did not come into his possession until the 13th of August, 1860.

2. The court erred in disallowing voucher No. 12, for so much money expended or disbursed by the plaintiff in the purchase of tombstones for the intestate and his wife. This voucher had been allowed by the court on the former trial, and had not been allowed or reversed by this court on writ of error, and hence, was *res adjudicata* as to the probate court. The purchase had been directed by the intestate in his lifetime, and hence the disbursement on this ground was proper.

The plaintiff submits whether the disbursement was not proper under art. 102, Code, 450.

3. The court erred in disallowing voucher No. 9.   See art. 102, Code, 450, and testimony of Davis, Saunders, and others.

*W. & J. R. Yerger*, for the plaintiff in error.

The record presents but two points, which we rely upon as errors :

1st. The refusal of the court to allow voucher No. 9.

2d. The refusal of the court to allow voucher No. 12.

Voucher No. 9 was an account of Mrs. Eliza Donald, presented against the estate of John Adams, deceased, and for which John T. Donald, the administrator of the estate, and the husband of Mrs. Eliza Donald, claims credits.   The account is for $500, due for services rendered John Adams,

during his sickness and confinement, the last three years of his life.

This court has had the consideration of this voucher before it, upon three distinct occasions. See opinion book "I," page 353 ; Donald v. McWhorter et al., 40 Miss. 231. See also opinion book " I," page 24.

In that last case the court says :  " We do not think the charge contained in voucher No. 9 is one which the law will imply a promise to pay.   There should be some proof that the services were rendered and received in contemplation of compensation being made.   The proof is too plain that the services were rendered—were received by the deceased, and were of the most extraordinary and difficult character."

That compensation was contemplated, is evident from the fact that the services were rendered by Mrs. Eliza Donald, who was of no kin to the deceased ; who was under no legal obligation to discharge the same, and whose only moral obligation to discharge it, arose from the fact that she was a woman of kind and charitable heart, and the object towards which the same was exercised was a very infirm and aged man, deserted by his own immediate family.

Voucher No. 12 was an account for indebtedness due to John T. Donald for cash paid for tombs, for Mr. and Mrs. Adams, $230.   This voucher was duly probated, and was " examined, audited and allowed by James A. Campbell, probate judge."

It was also a charge eminently right and proper.   The deceased in his last illness, had desired three tombstones to be erected ; and they had been passed upon by the court, and paid by the administrator.

Certainly, where an administrator pays out funds in good faith, and with the approval of one judge, it is error for a subsequent judge to refuse to allow the same, unless in a very clear case of fraud or neglect of duty.

*Raymond Reid*, for defendant in error.

The first assignment of error is the part sustaining excep-

tion eight of the appellees. The court here decreed the administrator should be charged for the hire of the slave, John, from January 9, 1860, to October 6, 1860, at the rate of $175 by the year. The evidence shows that John belonged to the estate of Adams; that Donald became administrator of Adams in January 3, 1860; that John worked for Donald from January 9, 1860, until the 6th day of October, 1860. Donald could have hired John out on any day after he became administrator. As Donald did not so hire him out he must now be responsible for it. It matters not that no appraisement was made until August, 1860; that was Donald's fault. 36 Miss., 350; 38 Miss., 167.

The third error complained of is the sustaining of exception four, and the disallowance of voucher twelve. Voucher twelve was a contract made by the administrator after the death of the decedent, Adams, and without any authority of law or any last will and testament, and cannot be brought in as funeral expenses, now for the first time in this court. Such a contract does not bind the estate. 23 Miss., 42; 27 Miss., 119; 3 How., 181; 9 S. & M., 193; 2 Williams on Executors, 1464.

The second error complained of is the sustaining of exception three, and the disallowing of voucher nine. This voucher is for services rendered by the wife of Donald. Her earnings belong to him; he, if any one, is the legal creditor, and by him the claim should be probated; but it is probated by her, and is illegal. 27 Miss., 830. This voucher for $500 for the services of Mrs. Donald, was repeatedly rejected by the probate court below, as well as by the high court, especially by its last decision in this case. This point is, therefore, emphatically *res adjudicata*.

The allowing of voucher fifteen and the overruling of exception seven by the court below was certainly erroneous.

1st. Voucher fifteen, above mentioned, is not supported by any legal or sufficient testimony. Everything like testimony in support of this voucher is a mere affidavit, and not a deposition, and not taken in open court, but is *ex parte,* and

without any opportunity in the opposing party to cross-examine.

· 2d. This voucher shows upon its face that it is barred by the statute of limitations ; it is excepted to on this ground.

3d. Besides, the giving of a promissory note is a presumption of a settlement of all prior indebtedness. In 1854 Adams gave his note to Donald for $445. This is a presumption of payment of all prior indebtedness, and especially should this presumption be indulged when it is recollected that Adams, for the last five years of his life, resided with Donald, and was an invalid, and completely under his control and management.

SIMRALL, J.:

This cause is brought to this court to review the decision of the probate court of Leake county, on summary exceptions taken to the final account of John F. Donald, admistrator of the estate of John Adams, deceased.

The first assignment of error challenges the propriety of the debit made against the administrator for the hire of the slave John, from the grant of the letters in January, 1860, to October of the same year, when the slave was sold under probate decree. The testimony shows that John was put in the service of his step-son, John F. Donald, by the intestate, many years before his death, in part to make some compensation for the support of the intestate and his wife, both of whom were quite old. The proof is ample and abundant, that the attention and care of Donald and wife to this aged and infirm couple, for very many years, were kind and unremitting, and that no adequate pecuniary compensation was, or could be made by the intestate therefor. But as the proof shows that the slave John was on the premises of the administrator at the death of the deceased, and continued there in service, after the death of decedent until sold, strict law would require that the administrator should make reasonable compensation for the service. There was no error therefore in so changing the administration.

2. It is also complained that the probate court erred in not allowing to the administrator voucher twelve, amounting to $230, for tombstones, etc.

This case has been heretofore thrice in this court, on exceptions to this account, and it is now claimed, that inasmuch as this credit has not been canvassed and condemned, it has become no adjudication in favor of the administrator. In the opinion pronounced at the April term, 1866, 40 Miss., 232, explanatory of a misconception of the former judgment, it is said, "under this direction, the court below should have examined the accounts anew, hearing all proper proof required by the statute to establish their validity and fairness, on the contrary, and deciding their correctness." The former opinions do not discuss this credit.

The objectors to this monument to mark the spot where repose the mortal remains of the father and his wife, are his daughters and sons, children by a former marriage, children who are shown by the testimony, not merely to have been wanting in filial piety, but some of them to have been violent and cruel to their aged and infirm parent. The effect of disallowing the credit would be to swell a little the distributive balance of each one of them. The objection might come with a better grace from creditors, if, because of it, they would fall short of full payment of their demands.

It is the duty of the administrator or executor to bury the deceased in a manner suitable to his degree in life, and the estate he leaves behind him. 2 Blk. Com., 508. Lord Coke said these funeral expenses are to be allowed of the goods of the deceased before any debt or duty whatsoever. The allowance may be more liberal as against legatees and distributees, than creditors as against the latter, the expense must be limited to what is really necessary. 2 Williams Ex'rs, 701. Lord Hardwicke, in Story v. Panter, 3 Atk., 119, said, that at law, no more shall be allowed, if a person dies insolvent, than is necessary. But in that case, he overruled exceptions to an expenditure of sixty pounds.

In Hancock v. Poamere, 1 Barn. & Adol., 260, the rule was

declared to be, that the executor or administrator is to be compensated for expenses according to the circumstances of each case, and if he exceeds these, he is to take the chances of the estate turning out insolvent; no precise sum can be fixed in all cases. £600 were laid out in Mr. Oppley's funeral, he being a man of wealth and distinction in his county, which was sustained. Offey v. Offey, Price Ch., 661. A person, being at a distance from home, sent for his wife and relations, but they did not arrive until after his death. The executor paid the expenses of the journey, and he was allowed credit therefor in his accounts. Jennison v. Hapgord, 10 Pick. 77.

The testimony shows that John Adams, the deceased, was anxious that a tombstone should be erected, to be paid for out of his effects, and, it would seem, exacted a promise from his step-son, Jno. F. McDonald, to do so.

One of the witnesses testifies that she heard the intestate say that he feared he would not have enough left to pay for tombstones, but Jno. F. Donald had said he would erect them, and he knew he would do it.

There is no doubt that Donald put up the monument out of deference to the wishes of the deceased, and could not anticipate that his own children would, after the expense had been incurred, disapprove it, and attempt to throw the burden on him personally. On a direct consideration of this outlay, the probate judge approved it, and allowed it as a proper outlay and credit to the administrator.

Respect for the memory of the dead, in whatever overt form of expression, is a noble sentiment. It serves to link the past generation with the living, and points to the hereafter.

Funeral expenses comprehend more than the shroud, the coffin, and the grave. We know that in towns and cities it includes carriage hire to convey the family and friends to the place of interment. We think too, that where no injustice is done to creditors, a compliance with the last wishes of the dying, as to the style and character of the funeral, if not extravagant or unreasonable, violates no principle of the

law. In McCinsey's appeal, 14 Serg. & Rawle, 64, the supreme court of Pennsylvania allowed the sum of $358 75 for funeral expenses, including a vault and tombstone. A handsome tombstone was erected over the vault, which was the principal article of expense. In that case, the widow wanted to pay this honor to the memory of her husband, and she was sustained, against the objection of the other distributees. We think, therefore, in the special circumstances of this case, the administrator should be credited with this expenditure.

3. The last assignment of errors is in disallowing voucher No. 9, an account for services of Mrs. Donald in attending on the deceased the three last years of his life.

The testimony represents the deceased a large part of this time in a most helpless condition, requiring assiduous and constant attention. Mrs. Donald performed the offices of a friend and nurse, with a self-denial and devotion honorable to herself and her sex; nor can there be a doubt that five hundred dollars, the charge made, would be but moderate compensation for these services.

In the MS. opinion of the court, at June term, 1867, speaking in reference to this claim, it is said: "We do not think the law will imply a promise to pay. There should be some proof that the services were rendered and received in contemplation of compensation being made."

In the opinion delivered at the October term, 1861, the preferment of the account is reprobated with some degree of sharpness.

In the report of the case, in 40 Miss., decided April term, 1866, the case was sent back, because the depositions of Mrs. Freelan and Mrs. Atkinson, in reference to this voucher, had been suppressed; and it is again in effect held, that the care, attention and service rendered by Mrs. Donald, must have been at the request of Mr. Adams in his lifetime, and with the express understanding that she should be paid for them.

We find nothing in the testimony reported in the record which shows any express understanding or agreement be-

tween Mrs. Donald and Mr. Adams, that she should be compensated pecuniarily. The current of the testimony rather tends to show that Adams and wife were received into the family of Donald, as pensioners on his bounty, and without intention or expectation of payment, except so far as the services of the slave John would contribute thereto.

There was no error, therefore, in rejecting this claim of Mrs. Donald.

As this cause has already been several times in this court, and it were time that the controversy were ended, we reverse the decree, and remand the cause, with directions to allow to the administrator credit for voucher No. 12, amount $233 10, and to proceed, without other testimony, to final decree, accordingly.