ALICE M. DUDLEY, administratrix, *vs.* JULIA A. SANBORN & others.

Middlesex.   March 29, 1893. — May 19, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Division of Personal Estate in Specie — Sales by Auction — Buying in by Administratrix — Allowance of Account — Interest — Dividends — Election — Confirmation of Sale by Distributees — Monument to Intestate — Allowance for Legal Services — Allowance for Box in Safety Deposit Vault.*

A. died intestate, leaving a widow and heirs at law and next of kin, but no children.   His widow, who was entitled to one half of his personal estate, proposed to take one half of certain stocks and bonds belonging to the estate *in specie*, but the distributees refused assent.   Thereupon she sold ten of twenty shares of certain stock, and one of two mortgages of equal amounts, issued or guaranteed by the same company, by public auction, after proper advertisement, at a price which was fair, but below the appraised value, bought them in herself, took the other ten shares and the other mortgage as her own, and charged herself with them at the auction prices.   The distributees elected to hold her liable for their value in money.   *Held*, that the election was conclusive that the sale was a sufficient test of the value of the securities, and that the administratrix should be allowed in her account for the loss between the prices obtained at the sale and the appraised values.

An administratrix having charged herself with interest on the price of stocks and bonds taken by her, from the time of the taking to the time of rendering her account, is entitled to the dividends paid since that time.

An administratrix, having by a decree of the Probate Court obtained leave to expend a sum of money for the erection of a monument on the burial lot of the intestate, afterward bought another lot elsewhere with her own money, removed thence the intestate's body, and erected the monument there. *Held,* that she was properly allowed that sum in her account, and that the fact that the expenditure was not within the terms of the decree was not conclusive against it, but simply left on the administratrix the burden of justifying it when she rendered her account. ·

A charge for legal services rendered to the administratrix in connection with an application to the Probate Court for leave to expend money of the estate in the erection of a monument to the intestate was properly allowed.

An administratrix may be allowed in her account for the rent of a box in a safety deposit vault.

Two APPEALS, one by Alice M. Dudley, administratrix of the estate of Albion J. Dudley, from a decree of the Probate Court disallowing certain items of her account as administratrix, and another by Julia A. Sanborn, Ellen M. Garrett, Annoretta Lee, Helen S. Dudley by Julia A. Sanborn her guardian, Carrie Dudley, Albion W. Dudley, and John Dudley, as the heirs at law and next of kin of Albion J. Dudley, from the same decree of the Probate Court allowing certain items of the account of Alice M. Dudley as administratrix.

The items in dispute were contained in Schedule B of the plaintiff's account, showing sundry payments and charges, and were as follows: Item 73. For plumbing, $12.05. Of this item, the sum of fifty cents was disallowed by the master, to whom the case was sent, on the ground that it was a charge against the administratix personally. Item 79. Rent of a box in a safety deposit vault, $6.75. Item 94. Charges of the administratrix, $2,400. This was reduced by the Probate Court to $1,200, and so allowed by the master. Item 95. Legal services rendered during term of administration, including cash paid for expenses, $665. Of this item, the sum of sixty-five dollars was paid for legal services in obtaining leave from the Probate Court for the erection of a monument to the plaintiff's intestate. Item 97. Loss on the sale of ten shares of stock of the Prescott National Bank, $30. Item 98. Loss on the sale of three Boston and Lowell bonds, $25.92. Item 99. Loss on the sale of twenty shares of the stock of the Belvidere Woollen Company, $900. Item 100. Loss on the sale of two eight hundred dollar mortgages of the Kansas Farm Loan and Trust Company. Item

101. Loss on five one hundred dollar U. S. government bonds, $6.37. Item 105. Amount expended for the erection of a monument as decreed by the court, $600. Item 106. Preparation of a burial lot by the Proprietors of the Lowell Cemetery, $20. The material facts appear in the opinion.

*J. J. Pickman*, for the appellant.

*G. W. Poore*, for the appellees.

HOLMES, J. This is an appeal by all parties interested from a decree of the Probate Court upon the first and final account of the administratrix of the estate of Albion J. Dudley. The main questions are whether the administratrix shall be allowed an item of $900, charged as a loss on twenty shares of the Belvidere Woollen Company (schedule B, No. 99), and one of $1,400 charged as a loss on two $800 mortgages of the Kansas Farm Loan and Trust Company (No. 100). The facts in brief, as found by the master, are as follows. The administratrix is the widow of the deceased, and is entitled to one half of his personal estate. She desired to take one half of certain stocks and bonds belonging to the estate *in specie*, including those above mentioned. The distributees refused assent. Thereupon she sold ten of the twenty shares and one of the mortgages at public auction, after proper advertisement, for a price which was fair, but below the appraised value, bought them in herself, took the other ten shares and the other mortgage as her own, charged herself with them at the auction prices, and now asks to be allowed the differences between these prices and the appraised values which are the losses in question. At a later date the distributees elected in writing to hold the administratrix liable for the value of the stock and bonds in money.

We are relieved from considering what otherwise would have been the rights of the widow and administratrix by the election just mentioned. See *Marvel* v. *Babbitt*, 143 Mass. 226; *Pierce* v. *Gould*, 143 Mass. 234, 235; *Mechanics' Savings Bank* v. *Waite*, 150 Mass. 234, 235; *Reed's estate*, 82 Penn. St. 428. There is no doubt that the interested parties could confirm the sale. *Litchfield* v. *Cudworth*, 15 Pick. 23, 31. *Yeackel* v. *Litchfield*, 13 Allen, 417, 419. Their election once signified was final. *Raphael* v. *Reinstein*, 154 Mass. 178, 179. Therefore the transactions in question must be taken to have been

legal. The only question is how the value of the stocks and bonds is to be fixed. The distributees claim the right to charge the administratrix with the appraised value, where, as in the items mentioned, that was greater than the auction price. But we see no reason for such a claim. She is to be charged with the actual value of the property at the time when she took it. The appraisement is not conclusive as to that. Pub. Sts. c. 144, § 3; *Mead* v. *Byington*, 10 Vt. 116, 121. A fair auction sale is better evidence. As to the ten shares of the Belvidere Woollen Company actually sold, we think that there can be no question. As to the ten kept, it is suggested that if sold they might have brought a different price. But, according to the common experience, when equal small lots of the same stock are sold at the same time the variations are not likely to be large, and we see no sufficient reason for not accepting the sale as a criterion.

As to the mortgages, the report is not so full as we could wish. But we understand that both were issued, or at least were guaranteed, by the Kansas Farm Loan and Trust Company. If they were bonds issued by the company and secured by the same mortgage, of course their values were equal. If they were private notes secured by different parcels of land and guaranteed by the company, theoretically they might have very different values. But they were for small sums, and the public here would not be likely to inquire into the details of the real estate mortgaged, or to go beyond the general reputation of the company which took the mortgages in the first instance. Practically, the standing of the mortgages in a Massachusetts market would be determined by the standing of the company which guaranteed them. If, when the single justice comes to consider the decree to be framed, he shall see reason to suppose that the master's report ought to be recommitted on this question, he will order it to be; but as we understand the facts, we are of opinion that the two mortgages properly may be assumed to be of equal value. On the same understanding we regard the sale as a sufficient test of the value. The master finds that the one sold probably was worth no more than it fetched, and is not satisfied that the other was worth more than the sum at which it was reckoned in the account.

The principles which we have laid down dispose of the items

of this class. (Nos. 97, 98, and 101.) The administratrix has charged herself with interest on the price of the stocks and bonds taken by her from the time of the taking. Of course she is entitled to keep the dividends paid since that time.

The only other item in question of any size is a charge of $600 for erecting a monument to the deceased (No. 105). The administratrix had obtained leave to spend that sum for the erection of a monument, etc. " on the burial lot of said intestate," but afterwards, preferring that he should be buried elsewhere, bought another lot with her own money, moved her husband's body, and put up the monument there. . The master finds that the sum should be allowed. The fact that the expenditure is not within the terms of the decree is not conclusive against it, but simply leaves on the administratrix the burden of justifying it when she renders her account. *May* v. *Skinner,* 149 Mass. 375. See *Sweeney* v. *Muldoon,* 139 Mass. 304, 306, 307. The statute authorizing an allowance for that purpose is not to be construed as confining the court to the case of a monument on a lot bought with the intestate's money. Pub. Sts. c. 144, § 6. We see no reason to disturb the decree of the single justice affirming that of the Probate Court, so far as it allows this item, or so far as it allows a charge for legal services in obtaining the leave mentioned from the Probate Court (No. 95), or for preparing the lot (No. 106).

The charge of $6.75 for the rent of a box in a safety deposit vault seems to us proper under the circumstances of this case. Nothing else calls for particular remark. We are of opinion that the account should be allowed, subject to a slight correction of No. 73 made by the master and not excepted to, except as to the charge of the administratrix. Her administration has been beneficial to the estate, but we see no sufficient reason for not following the master's report, which agrees with the finding of the judge of probate.

*Decree accordingly.*