NICHOLSON. v. WHITLOCK.

1. ADMINISTRATORS—INTEREST—ACCOUNTING.—Under the facts in this case, the administrator should be charged interest on all funds on hand at commencement of calendar year after appointment, less payments made during first administration year. Rule in such cases stated.

2. COTTON—ACCOUNTING.—ADMINISTRATOR not chargeable with decrease in price of cotton while holding it.

3. IBID.—IBID.—ADMINISTRATOR did right in storing and insuring cotton, and charges, therefore, approved.

4. ACCOUNTING.—ADMINISTRATOR's settlement with croppers by charging himself with whole amount of cotton, and crediting amount paid to croppers as their share, less amount due deceased, and cost of ginning, &c., approved.

5. IBID.—INTEREST.—ADMINISTRATOR is not entitled to interest on money borrowed to pay claims against estate before expiration of administrative year.

6. INTEREST.—Circuit Judge lays down the proper rule for calculating interest on this bond.

Before GAGE, J., Union, April, 1899.    Modified.

Action by Emslie Nicholson, administrator *de bonis non* of estate of F. G. Whitlock, against Mary Whitlock and his other heirs at law, and creditors.    Rebecca E. Nicholson, as executrix, and Mary Whitlock, parties of record, and A. E. Hardin and W. E. Moorhead, creditors proving claims, ap-

peal.    The Circuit Judge says in reference to the bond held
by Wm. A. Nicholson (deceased), administrator: The
master has reported a balance of $2,474.51 due on the Nich-
olson bond and mortgage, dated 18th February, 1885.    I
have been unable to ascertain how that result was reached,
but it is incorrect.    The bond bears date of 18th February,
1885, was due 18th February, 1886, for $3,892.48; bears in-
terest from maturity "at the rate of ten per cent. per annum,
payable annually, until the whole debt is paid."  The intestate
made eight payments on the bond, the administrator made
an application, the whole aggregating $7,376.29.    Each
year there became due on the principal a sum known as an-
nual interest; for convenience, I shall call it coupon.    These
coupons became due themselves at the end of each contract
year, and if not paid before or at that time, they drew inter-
est, not at ten per cent., but at seven per cent.    The whole
debt was past due when the first payment was made; the
principal was due, so was the coupon, so was the interest on
the coupon.    There was no need, and no contract to wait
until a stated day to apply a payment, for payment was
owing every day after maturity of the principal.    When the
·first payment was made, there was due as coupons $755.78,
and as interest on coupons $25.65—$781.43.    That pay-
ment must be applied to the  satisfaction  of  that interest,
whether more or less than the interest then due.    If more,
the balance of payment goes on the principal; if less, the bal-
ance of interest draws interest until next payment, because
the contract is to pay annually.    In this case, at the date of
the second payment, there was due as coupons the sum of
$720.09; balance interest after 1st payment, $281.43; inter-
est on that balance, $36.43; interest on coupon, $23.15—
$1,061.10.    The second payment must be applied to the sat-
isfaction of that interest.    I have hereto attached two sheets,
showing the calculation of all interest and payments, and
tending to show a balance due on the bond debt, at date of
the report, of not more than $1,000 or $1,100.    The accurate

result depends on the application of fund in administrator's hands, pursuant to the findings hereinbefore made.

*Mr. R. W. Shand,* for Mrs. Nicholson, cites: *As to duty of administrator:* 11 S. C., 139; 3 Hill, 204; 4 Rich. Eq., 95; 18 S. C., 28. *Cotton was property of estate:* 15 S. C., 85; 20 S. C., 10. *Probate Court has jurisdiction of all matters administrative:* 24 S. C., 401; 41 S. C., 18; 33 S. C., 276; 38 S. C., 41. *Its order as to the cotton cannot be questioned in this proceeding:* 14 S. C., 239; Speer. Eq., 289; 2 Hill Ch., 361. *Administrator should be protected in insuring and storing cotton:* 24 S. C., 589; 2 McC., 75; Rice Ch., 54; 44 S. C., 422.

*Messrs. J. Clough Wallace* and *J. A. Sawyer,* for Messrs. Moorhead and Hardin and Mrs. Whitlock, cite: *Administrator cannot make profit for himself:* Rich. Eq. Ca., 174; 2 McC. Ch., 204; 16 S. C., 182. *An administrator cannot create a debt against the estate:* 16 S. C., 213; 3 S. C., 242; 1 Bail., 126; 2 N. & McC., 328. *He should account for highest price for cotton while he held it:* 18 S. C., 183. *As to interest against administrator:* 11 S. C., 140; 14 Rich. Eq., 305. *As to interest on Nicholson bond:* 55 S. C., 144; 30 S. C., 61. *As to time of payment by administrator on his own bond:* 2 Hill, \*342; 17 S. C., 524.

*Messrs. Munro & Munro,* contra, for plaintiff.

March 21, 1900. The opinion of the Court was delivered by

MR. JUSTICE GARY. So much of the statement of facts set out in the record as is necessary for a proper understanding of the questions involved is as follows: "This action was begun by the service of summons and complaint, April 27, 1896. The action was by W. A. Nicholson in his own right, and as administrator of F. G. Whitlock, deceased, and was for sale of lands in aid of assets. F. G. Whitlock died 8th August, 1895, and W. A. Nicholson was appointed his

administrator, August 31, 1895. The complaint alleges insufficiency of the personal estate to pay debts, and the necessity to sell the lands of the intestate, said lands comprising three parcels, one of 2,140 acres, another of 61 acres, and a third of 283 acres. The complaint further alleges that the plaintiff, W. A. Nicholson, as administrator, has sold a considerable portion of personal estate, and has in his hands a considerable sum of money arising from such sale, which he is ready to apply to the indebtedness of the estate, which is very large and exceeds by many thousand dollars the value of the personal estate; that the plaintiff in his own right holds a mortgage on the tract of 2,140 acres, executed by the intestate to the plaintiff, February 18, 1885, to secure a bond of intestate for $3,892.48, said mortgage being duly recorded in the office of the R. M. C. for Union County, 26th February, 1885, and also another mortgage on the tract of 61 acres, dated 28th January, 1892, to secure same bond, which mortgage was recorded same day, said mortgage being a first lien upon each tract, respectively. The complaint further alleges that the defendants, Mary E. Hughes and W. W. Hughes, hold a purchase money mortgage upon the 283 acre tract to secure a debt of $1,886.66, and that said defendants have commenced their action to foreclose their mortgage. That the defendant bank holds a mortgage of the intestate, dated December 13, 1892, upon the tract of 2,140 acres and the tract of 283 acres, to secure payment of a note of $5,800, dated December 13, 1892, payable six months after date. That the plaintiff is ready to account and pay over all funds in his hands as administrator. The complaint prays for an injunction and for the sale of lands; that creditors be required to establish their demands, and that the plaintiff may account as administrator. The defendants, Merchants and Planters Bank and W. W. Hughes and Mary E. Hughes, answered, setting up their respective mortgages, and the defendant, Mary Whitlock, also answered. All the issues of the action were referred to C. H. Peake, master, to hear and determine same. The lands

were ordered to be sold, and were sold, except —— acres, claimed as homestead exemption, and, from the proceeds of the sale of the 283 acre tract, the purchase money mortgage of Mary E. Hughes and W. W. Hughes was ordered to be paid. Pending the action, W. A. Nicholson died, and his executrix, Rebecca E. Nicholson, was made a party defendant. Emslie Nicholson was appointed administrator *de bonis non* of F. G. Whitlock, and was substituted as plaintiff. So much of the testimony, together with a summary of the remainder, as is necessary to the proper understanding of the questions is as follows: * * * The slips of paper, mentioned by the Circuit Judge, and the testimony show that in settling with each cropper the administrator deducted 22 pounds from each bale for bagging and ties, also the charge for ginning, and the cropper's share being one-half, he deducted from the market value of the cropper's share, on day of settlement, after deducting bagging and ties and for ginning, any amount due Whitlock by the cropper for advances or supplies furnished, and thus ascertained the true amount due the cropper. This amount he borrowed from W. A. Nicholson & Son, giving his note as administrator therefor, and paid the cropper his share. The aggregate of these notes for money so borrowed to pay croppers amounted to $1,587.24, the interest thereon to $64.46, and the insurance and storage to $353, equals $2,004.70, which deducted from the sale of the cotton, $3,587.63, leaves the balance $1,582.93, credited May 23, 1896, as half proceeds of the 107 bales of cotton. The evidence further showed that the funds of the estate were deposited by the administrator in the bank of W. A. Nicholson & Son to his credit as administrator of the intestate, and that the $3,230.80 credited upon the bond, August 31, 1896, was drawn out that day by the check of W. A. Nicholson, as administrator of F. G. Whitlock, for that amount, in evidence; that the personal property, except the cotton, was sold at the plantation, twelve miles away from Union, to which place the cotton was being hauled and stored under the supervision of George Whitlock,

a son of the intestate, one of the defendants, who accompanied the croppers and gave information of their accounts; that W. A. Nicholson & Son, said firm being composed of W. A. Nicholson (who was the administrator of F. G. Whitlock) and his son, Emslie Nicholson (who since the death of his father has become the administrator *de bonis non* of F. G. Whitlock), leased and operated the warehouse, and paid the insurance charges, which were refunded them by the administrator, who also paid the storage charge. The charges for insurance and storage were the usual and customary charges." The bond of F. G. Whitlock to W. A. Nicholson provided that if not paid at maturity, it should bear interest after maturity at the rate of ten per cent. per annum, payable annually until the whole debt was paid.

It will not be necessary to consider the exceptions in detail. The first question that will be considered is whether there was error on the part of his Honor, the Circuit Judge, in deciding that the administrator was not chargeable with interest. The administrator's first and only return shows that he received various sums between the 21st September, 1895, and 23d May, 1896, aggregating $4,943.23; of this amount $3,119.33 was received 4th December, 1895, and $1,582.93 on 23d May, 1896. Between 9th September, 1895, and 12th March, 1896, the administrator made sundry expenditures, and on 31st August, 1896, as hereinbefore stated, drew from the bank on his check, as administrator, $3,216.29, and credited it on the mortgage which he held against the estate of F. G. Whitlock, leaving in his hands a small balance. Section 2046 of the Revised Statutes provides that an executor or administrator shall be allowed twelve months to ascertain the debts due by the deceased. The case of *Koon* v. *Munro*, 11 S. C., 139, shows that as a general rule an administrator is chargeable with interest from the beginning of the year succeeding that in which he received his appointment. It is also a general rule that all funds received during the current year are to be regarded as unproductive until the end thereof, and all

expenditures made during the course of the year should be regarded as made before the balance is struck that is to bear interest. *Pettus* v. *Clawson,* 4, Rich. Eq., 95; *Tompkins* v. *Tompkins,* 18 S. C., 1; *Oswald* v. *Givens,* Riley's Eq., 38. The case of Pettus *v.* Clawson also shows that the principle is well established that it is a matter of discretion with the Court in the exercise of its equitable jurisdiction, whether it will allow interest against the administrator. The rule laid down for the conduct of trustees in dealing with the trust estate is thus stated in *Dixon* v. *Hunter,* 3 Hill, 204: "The general rule, as laid down in all the cases, in reference to the accountability of trustees, is that they shall use such diligence in the preservation and improvement of the trust fund as a prudent man would do in relation to his own affairs. The corollaries to this proposition are: 1st. That he shall not make profit out of his trust; and 2d. That he shall be charged with no loss except for neglect of duty. All rules on the accountability of trustees must be made in subordination to these principles, and whenever a case occurs in which the appliction of a general rule violates these principles, the case should constitute an exception to the rule, and be decided with reference to the great principles which I have just stated." Let us test this case by the foregoing principles. The administrator had on hand at the beginning of the year 1896, a considerable sum of money belonging to the estate; he knew that he could not be required by law to pay out this sum until after 31st August, 1896; he was engaged in the banking business, and necessarily had experience in making investments; he had the cotton on hand, which in case of an emergency he could have converted into money; he had arranged with the croppers, and lastly, he knew that the principal part of the money in his hands would be credited on the bond he held against the estate, which was bearing a high rate of interest. He did not exercise ordinary prudence, and there are no facts warranting this Court in exempting him from the general rule stated in Koon *v.* Munro. The administrator should be charged interest on

the amount in his hands 1st January, 1896, after first deducting all expenditures made by him prior to 31st August, 1896. As the administrator did not receive any money (except $1.85 for rent of pasture) until the 23d May, 1896, near the time when he could be required to account, he should not be charged interest on such sum.

The next question is whether the administrator is chargeable with the loss caused by the price of the cotton being less when sold on 23d May, 1896, than when delivered to him. The order of the Probate Court, dated 13th January, 1896, allowed the administrator to sell the cotton at such time as in his judgment would be for the best advantage of the estate. The Circuit Judge finds that the administrator acted in good faith, and no negligence is shown. Under these circumstances, the Court agrees with the Circuit Judge that the administrator is not chargeable with such loss.

The next question is whether there was error in refusing to allow the administrator the charges for storage and insurance. The law requires the administrator to use such care in preserving and protecting the property of the estate as ordinarily might be expected to be exercised by a reasonable man. In other words, he must act in an ordinarily business-like manner. This was done by the administrator in protecting and preserving the property. The fact that the cotton was placed in the warehouse of W. A. Nicholson & Son should not prevent Whitlock's estate from being chargeable for the storage and insurance, unless there was bad faith on the part of the administrator, which was not the case.

The next question is that relating to the bagging, ties, ginning and advances made by Whitlock to the croppers. The manner in which the administrator settled with each cropper is hereinbefore stated. The cotton belonged to Whitlock's estate, although the croppers had an interest in it. The administrator very properly charged himself with the entire proceeds of sale, and only

deducted what had been paid to the croppers. The estate in this way received the benefit of the bagging and ties on the cotton, as well as all deductions made from the croppers' shares, including what was deducted for the advances afore-said.

The next question is whether the administrator should be allowed the charge of $64.46 as interest on the money borrowed to pay the croppers. In the first place, he was required by law to settle with the croppers until the end of the year allowed by law for ascertaining the indebtedness of the estate; and, in the second place, he should have used the funds of the estate, if he was required to make the payments to the croppers. If he did not have the money on hand just at that time, he should have expended the money of the estate as soon as he received it.

The next question is whether the Circuit Judge erred in the mode adopted by him for calculating interest on the bond held by the administrator against the estate. The Circuit Judge has stated the rule and illustrated it. This Court sees no error in the rule which he has laid down.

It is the judgment of this Court, that the judgment of the Circuit Court be modified in the particulars hereinbefore mentioned, and that the case be remanded for such further proceeding as may be necessary.