RICHARDSON et al. v. McCLOSKEY et al. (No. 533–4225.)

(Commission of Appeals of Texas, Section B. Oct. 21, 1925.)

1. Appeal and error ⟐1083(3)—Supreme Court will review holding of trial court based on its view of the law.

Where trial court rendering judgment in accordance with report of special master in chancery based its holding, charging executor with amount paid for tombstone, upon its view of the law, rather than on findings of fact, Supreme Court will review holding of Court of Civil Appeals on such matter.

2. Executors and administrators ⟐109(2)— Tombstone generally held funeral expense if not disproportionate to value of estate.

Expenditures for monuments and tombstones are generally held authorized as part of funeral expense where cost is not disproportionate to value of deceased's estate, although funeral expense is not defined in Vernon's Sayles' Ann. Civ. St. 1914, art. 3460.

3. Executors and administrators ⟐109(2)— Funeral expenses held to include tombstone.

Funeral expenses are *held* to include tombstone in keeping with estate of deceased, and expenditure for such purpose should be allowed and charged against estate.

4. Executors and administrators ⟐109(1)— Executor should be credited with sums paid out for insurance premiums.

Refusal to allow executor credit for sums paid out for insurance premiums on policies covering property of estate *held* error, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 3350, charging representatives with care of property of estate.

5. Executors and administrators ⟐465—Executors wrongfully charged with funds paid out by temporary administrator.

Sums paid out for bookkeeping by temporary administrator, never actually coming into their hands as executors, were wrongfully charged to executors in accounting.

6. Executors and administrators ⟐510(11)— Court of Civil Appeals may properly reverse judgment allowing executors attorney fees based on finding of fact.

Court of Civil Appeals may properly reverse judgment as to item of attorney fees and accounting by executors, since it is peculiarly within its province to pass finally upon any

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

question of fact, and since its holding was based upon finding that there had been maladministration of estate by executors.

### 7. Executors and administrators ⟨Key⟩510(11)—Master's finding conclusive in absence of exception thereto.

Where no exception was filed to report of master appointed by the trial court in disallowing credits in accounting by executors, assignment of error for affirmance by the Court of Civil Appeals will be overruled, since master's finding was conclusive in absence of exception.

### 8. Life estates ⟨Key⟩18—Taxes chargeable to life tenant.

One who takes life estate in property of decedent elects to take as a whole with benefits of income and profits, and under corresponding burdens of current expenses, including taxes, repairs, and upkeep.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by Robert J. McCloskey and others against George Richardson and another. The judgment of the trial court was, by the Court of Civil Appeals (261 S. W. 801), affirmed on defendants' appeal and reversed and remanded, with instructions, on plaintiffs' cross-assignments, and defendants bring error. Reversed and remanded for another trial.

Wright & Harris, of San Angelo, Snodgrass, Dibrell & Snodgrass, of Coleman, and Jenkins & Miller, of Brownwood, for plaintiffs in error.

S. E. Taylor and Hill & Hill, all of San Angelo, for defendants in error.

SPEER, J. Robert J. McCloskey and others as residuary legatees and devisees of the estate of T. H. McCloskey, deceased, filed suit against George Richardson and James H. Neill, as independent executors of the estate of the said T. H. McCloskey, and individually, also against James J. Neill as independent executor and residuary legatee and devisee under the will of Laura McCloskey, deceased, who was the wife of the said T. H. McCloskey, for an accounting and to recover possession of their alleged interest in the estate of T. H. McCloskey, deceased, and for partition. The estate was a large one, and the accounting involved a great many transactions. The trial court appointed a special master in chancery to state the account, and, upon the master's report, rendered judgment in accordance therewith in all particulars save he allowed an exception for failure to include attorneys' fees to the executors, and entered judgment accordingly, allowing $5,000 therefor. The substance of the judgment is correctly stated by the Court of Civil Appeals as follows:

"(1) That T. H. McCloskey died December 26, 1914, leaving a will, duly probated in Tom Green county, and that appellants qualified as independent executors thereunder without bond April 9, 1915.

"(2) That Laura McCloskey died October 28, 1917, leaving a will duly probated in said county, and that appellant James J. Neill qualified thereunder as independent executor without bond January 11, 1918.

"(3) That T. H. McCloskey and Laura McCloskey were husband and wife, and acquired as their community property the corpus of all the real and personal properties mentioned and described in the pleadings and the master's report (other than those articles settled by the aforesaid agreement), each owning at the death of T. H. McCloskey an equal one-half interest therein.

"(4) That appellees were the sisters and brothers of T. H. McCloskey, deceased, and the residuary legatees and devisees under his will, and entitled to receive the residuum of his estate.

"(5) That appellant Neill was the residuary legatee and devisee under the will of Laura McCloskey, deceased, and entitled to the residuum of her estate.

"(6) That all debts against the said community estate were paid before the death of Laura McCloskey.

"(7) That all the special money legacies and charges under the will of T. H. McCloskey, deceased, were paid and delivered before May 1, 1918, and that the appellees were entitled to receive on and before said date the one-half interest of the estate of T. H. McCloskey, deceased, in the residuum of said community property, and the net rents and incomes therefrom accruing after the death of said Laura McCloskey.

"(8) That appellees made demand on appellants on and before said date (May 1, 1918), for an accounting and settlement of said estate, and for partition and the possession of their interest therein, with the net rents and incomes therefrom accruing subsequent to the death of said Laura McCloskey.

"(9) That appellants refused to deliver the possession thereof, and denied the appellees' right to a partition and possession thereof.

"(10) That appellants had been in the possession and control of all of the community estate of T. H. and Laura McCloskey, deceased, since May 1, 1918, and had collected all of the rents and incomes of said community properties, and had refused to account for and pay to appellees any part thereof.

"(11) That appellees' interest in said estate was not chargeable with any part of the sum paid by appellants to R. L. Armstrong after May 1, 1918.

"(12) That appellees were entitled to receive from appellants the interest of appellees as residuary legatees aforesaid on May 1, 1918.

"The court further found from the evidence and the report and findings of the master:

"(1) That out of the corpus of said community assets converted into cash prior to May 1, 1918, and the proceeds of the sale of the real estate and the net rents and incomes from the real and personal properties of said community estate since November 1, 1917, appellants had

⟨Key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

appropriated and used the sum of $12,087.87 in excess of the one-half interest of the Laura McCloskey estate therein.

"(2) That appellants were liable to appellees for interest on the moneys accruing to them and withheld by them since May 1, 1918, the further sum of $1,960.14.

"The total judgment of appellees was the sum of $14,048.01, with interest from date at 6 per cent. per annum. · The manner of enforcing the judgment and partition of the estates, and the other matters disposed of by this judgment, are as follows:

" 'That said properties, real and personal, above described, are jointly owned by the plaintiffs as residuary. legatees and devisees under the last will of T. H. McCloskey, deceased, and James J. Neill, as independent executor and residuary legatee and devisee under the will of Laura McCloskey, deceased; that plaintiffs Robert J. McCloskey, Martha Simpson, Fred W. McCloskey, Richard McCloskey, and Maggie Glick are the joint owners of the undivided one-half interest therein, and the said defendant James J. Neill, as executor and legatee and devisee aforesaid, owns the other ,undivided one-half interest therein; that said properties are capable of partition and division in kind; and that the plaintiffs are entitled to a partition and division thereof. It is therefore ordered, adjudged, and decreed by the court that said above-described personal properties, lands, and premises, be and the same are hereby ordered and directed partitioned and distributed equally, one-half thereof jointly to the plaintiffs Robert J. McCloskey, Martha Simpson, Fred W. McCloskey, Richard McCloskey, and Maggie Glick, as the residuary legatees and devisees under the will of T. H. McCloskey, deceased, and one-half thereof to the defendant James J. Neill, as independent executor and residuary legatee under the will of Laura McCloskey, deceased.

" 'It also appearing to the court that Louis Farr, H. L. Fannin, and E. I. Jackson are residents of Tom Green county, Tex., and are competent and disinterested persons, ·it is ordered that they be and are hereby appointed commissioners, a majority of whom may act to make a fair, equal, just, and impartial partition and division of said personal property and land and premises above described between plaintiffs and defendants in accordance with this decree and the law, in the manner following:

" 'If the defendants, on or before the date of the issuance of writ of partition herein, shall pay to the clerk of this court for the plaintiffs the sum of $14,048.01, with interest from this date at 6 per cent. per annum, which payment, if made, shall be noted by the clerk on said writ, the commissioners shall divide said real estate and personal properties into two equal shares, and shall allot in the manner provided by law one of said shares to the plaintiffs Robert J. McCloskey, Martha Simpson, Fred W. McCloskey, Richard McCloskey, and Maggie Glick, and one of said shares to the defendant James J. Neill, independent executor and residuary legatee and devisee of Laura McCloskey, deceased.

" 'If said sum of $14,048.01 is not paid to the clerk for the plaintiffs as aforesaid, then the said commissioners shall make said partition as follows:

" '(1) They shall ascertain and determine the value of said lands and premises.

" '(2) They shall ascertain and determine the value of said personal properties and assets.

" '(3) They shall then divide said real estate and personal properties into two shares, allotting and setting apart to plaintiffs Robert J. McCloskey, Martha Simpson, Fred W. McCloskey, Richard McCloskey, and Maggie Glick one part thereof equal in value to one-half of the value of the whole of said properties plus $14,048.01, and shall allot and set apart to James J. Neill, independent executor and residuary legatee and devisee of the estate of Laura McCloskey, deceased, one part thereof equal in value to one-half of the whole of said properties and assets less $14,048.01.

" 'When said partition has been completed, the commissioners shall make report in writing under oath to the May term, 1922, of this court, describing the real estate and personal properties divided, giving the several tracts, parcels and parts thereof into which the same is divided, describing particularly each of said tracts, parcels, and parts, and the estimated value and allotment of each share, accompanied by such maps and other descriptions as may be necessary to make the same intelligible.

" 'It is further ordered and adjudged by the court that the plaintiffs recover of the defendants all costs in this behalf incurred, for which they may have their execution.

" 'It is further ordered, adjudged, and decreed that the sum of $5,000 be allowed the defendants George Richardson and James J. Neill, executors of the estate of T. H. McCloskey, deceased, as attorneys' fees in this cause, to be paid out of the joint estates owned by plaintiffs and defendants, upon final adjudication and settlement of all matters herein and at the conclusion of this suit.

" 'It appearing to the court that the said properties and ·assets are in the possession of the receiver heretofore appointed by this court, and that he has in his hands, as shown by his report on file, the sum of $4,545.33, it is ordered that said sum shall be held by him, with all rents and incomes hereafter coming into his possession as receiver, and shall not be taken into consideration in the partition aforesaid by the commissioners, but shall remain to 'be disposed of in the final judgment to be rendered herein on termination of said receivership.' "

Upon appeal to the Court of Civil Appeals, the judgment was in all respects affirmed except as to the allowance for attorneys' fees, in which particular it was reversed and remanded, with instructions. A very full statement of the case has been made by the Court of Civil Appeals in its opinion in 261 S. W. 801.

In stating the account between plaintiffs and defendants, the master charged the latter with the sum of $2,532 paid by the executors, covering the items of a monument to the deceased and the placing of a curb about the cemetery lot. This is challenged by plaintiffs in error by appropriate assignments, the contention being that the charge is properly one against the estate, for which the executors should have credit in their accounts. In disposing of this issue, the Court of Civil Appeals said:

"An issue of fact was joined by the pleadings and the evidence of whether such expenses were contracted for by Laura McCloskey, intending to be paid by her out of her own estate. The issue of fact was submitted to the master, who found that she did contract for these expenses, intending to bind her estate therefor; and the court upon the master's findings and report entered judgment charging the life estate of Laura McCloskey with such expenses. The testimony supports such findings and judgment, and they will not be disturbed on appeal. Goldberg v. Zellner (Tex. Com. App.) 235 S. W. 870."

We are not unmindful of the conclusive effect of a finding of fact by the Court of Civil Appeals, and if the charging of this item is predicated wholly upon a finding of fact by the trial court, we have no authority or disposition to interfere with it. The pleadings of the parties undoubtedly did make an issue as to whether or not the defendants had paid out this sum in erecting a tombstone suitable for the deceased and in keeping with the amount and value of his estate; and, granting that the pleadings also embraced the issue that such purchase was upon the personal liability alone of the surviving widow, life tenant in the estate, we will consider the master's finding to ascertain whether or not his rejection of the item was based upon such issues of fact or upon an erroneous conclusion as to the law. The report states:

"The testimony in regard to these items is that the executors authorized Laura McCloskey (surviving widow and life tenant) to make a contract for a tombstone and for the erection of a curb around the lot in the cemetery where her husband was buried and that Laura McCloskey entered into a contract for the purchase of a tombstone and that the bills therefor amounting to $2,532 were presented to the executors and paid by them. The contention made by the defendants is that the tombstone and curb constitute a part of the funeral expenses, and should be charged as a part of the same, and paid either out of the community funds or the separate estate of T. H. McCloskey. I have been unable to find any Texas cases which pass upon this issue. In other states it has been decided that expenditures for tombstones are part of the funeral expenses, and also that they are not. I find that such expenditures in Texas are not part of the funeral expenses, and the legatees under the will of T. H. McCloskey should not be charged with these expenses without their consent, given prior thereto, and I find that they should be charged to the life estate of Laura McCloskey. In view of the estate and the position in life of the said T. H. McCloskey, I find that the amount expended for tombstone and curb was a reasonable one."

[1] It is thus apparent the matter has turned in the master's mind, not upon any supposed individual liability by reason of contract upon the part of Laura McCloskey, but rather upon his view of the law to the effect that expenditures such as this are not part of the funeral expenses chargeable to the estate. There is no intimation in his finding that his charging the life estate with this item is predicated upon any finding of fact to the effect that Laura McCloskey undertook personally to make the purchase. On the contrary, it is plain that he held against the executors because he thought, under the law of Texas, such item was not a legitimate expenditure on behalf of the estate. This being true, we feel at liberty to review the holding of the Court of Civil Appeals upon the matter.

It is to be observed in the first place the Court of Civil Appeals has based its holding, not upon the state of the law governing such matters, but upon a supposed finding of fact by the trial court, which, as we already have shown, is an erroneous assumption.

[2] The first item provided for by statute in the order of payment of claims against an estate of a decedent is that of funeral expenses and expenses of last sickness. The statute (Vernon's Sayles' Civ. St. art. 3460), does not undertake to define the term "funeral expenses." Expenditures for monuments and tombstones are generally held authorized as part of the funeral expenses where the cost of such expenditures is not disproportionate to the value of the deceased's estate. Indeed, such holding is well nigh universal. Bendall v. Bendall, 24 Ala. 295, 60 Am. Dec. 469; Van Emon v. Tulare, etc., Ct., 76 Cal. 589, 18 P. 877; Fairman's Appeal, 30 Conn. 205; Phillips v. Ducket, 112 Ill. App. 587; Lutz v. Gates, 62 Iowa, 513, 17 N. W. 747; Hespen v. Hespen (Ky.) 105 S. W. 99; Crothers v. Crothers, 123 Md. 603, 91 A. 691; Dudley v. Sanborn, 159 Mass. 185, 34 N. E. 181; Pistorius' Appeal, 53 Mich. 350, 19 N. W. 31; State v. St. Louis, etc., Ct., 138 Minn. 107, 164 N. W. 365, L. R. A. 1918A, 766; Donald v. McWhorter, 44 Miss. 124; Griggs v. Veghte, 47 N. J. Eq. 179, 19 A. 867; Owens v. Bloomer, 14 Hun (N. Y.) 296; Matter of Howard, 3 Misc. Rep. 170, 23 N. Y. S. 836; In re Beach's Estate, 1 Misc. Rep. 27, 22 N. Y. S. 1079; Webb's Appeal, 165 Pa. 330, 30 A. 827; Sherwood v. McLaurin, 103 S. C. 370, 88 S. E. 363; Gooch v. Beasley, 137 Tenn. 407, 193 S. W. 132; 11 R. C. L. § 253, p. 226; 24 C. J. § 522, p. 93.

In State ex rel. Smith v. Probate Court, 138 Minn. 107, 164 N. W. 365, L. R. A. 1918A, 766, an expenditure of $7,000 from an estate inventoried at $58,601.45 for the erection of a tombstone at the grave of decedent was held to be an expense of administration, and therefore deductible in determining an inheritance tax. In that opinion it is stated:

"There is no question as to the reasonableness of the amount expended for the tombstone, and the question in the case is this: Is the expenditure by the executor under allowance by the probate court, of a reasonable sum for a tombstone a proper expense of administration? * *. * We think on principle, as well as on authority, the

expenditure under order or with the approval of the probate court, of a reasonable sum for a suitable tombstone to be placed upon the grave of the deceased should be considered an expense of administration of his estate."

Indeed, the case of Goldberg v. Zellner (Tex. Com. App.) 235 S. W. 870, cited by the Court of Civil Appeals, is itself authority for the holding that the community estate is primarily liable for such expense in the absence of a contract to the contrary.

[3] At all events and upon sound reasoning, aside from precedent, we are of opinion that a liberal interpretation of our statute and a decent regard for the memory of the dead would warrant and require a holding that funeral expenses would include a tombstone in keeping with the estate of the deceased, and that an expenditure for such purpose should be allowed and charged against the estate. We think the Court of Civil Appeals erred in refusing to allow this item in favor of plaintiffs in error.

[4] The Court of Civil Appeals held there was no error in refusing to credit the executors with the sum of $1,105.37, paid by them as insurance premium upon policies covering property belonging to the estate. In this, too, we think there was error. In deciding this question, the Court of Civil Appeals, finding no authority in Texas directly adjudicating the point, likened the item to taxes and repairs made during the existence of a life estate, and out of that analogy deduced the rule that the life estate, being liable for taxes and repairs generally, was likewise liable for the cost of insurance. It is doubtless true that in the absence of anything that requires it in the instrument creating the estate, or of any agreement to that effect on his part, the life tenant is not bound to keep the premises insured for the benefit of the remainderman. It may be true that if the life tenant takes out insurance for his own benefit the remainderman would have no interest in the proceeds in case the property is destroyed by fire. This might follow because the remainderman not being a party to the contract of insurance, and the life tenant, being under no legal or moral duty of insuring for his benefit, he would have no interest in such proceeds. But here we have no such case. The policies were not taken out at the instance or specially for the benefit of the life tenant. They were taken out in favor of the estate by the legal representatives of the estate, and the proceeds therefore would belong to the estate, and no good reason is apparent why the estate should not be charged with the premiums. Obviously, such expenditures are not to be classed with those for current taxes and needed repairs. These latter are more nearly incidental to the estate of the life tenant. In the event of destruction of the buildings, the executors would no doubt be authorized to replace them

with the proceeds of the policies, thus protecting, not only the interest of the life tenant, but of the remaindermen as well. We think it is in keeping with the duty of the executors as imposed upon them by statute (Vernon's Sayles' Civ. St. art. 3350), declaring the representative shall "take such care of the property of the estate of his testator or intestate as a prudent man would take of his own property," to insure the buildings belonging to the estate, and we hold that where, as here, the representative of the estate does insure the assets of the estate against fire, he is entitled to be reimbursed for the premiums paid in an accounting of the affairs of the estate. See Holland v. Doke, 135 Ark. 372, 205 S. W. 648; Matter of Woods, 106 N. Y. S. 471; Nicholson v. Whitlock, 57 S. C. 36, 35 S. E. 412; 24 C. J. § 551, p. 111.

[5] Next, the plaintiffs in error insist they should have been allowed in the accounting the sum of $651.07, covering certain items of expense, including bookkeeping, expended by the temporary administrator, since said sum so paid by the temporary administrator never actually came into their hands as executors. It is plain, we think, that if this sum were paid out by the temporary administrator and never in any wise came into the hands of these executors, it should in no event be charged to them in the accounting. That such are the facts seems not to be controverted. The Court of Civil Appeals therefore erred in not sustaining the executors' assignments complaining of the refusal of this item.

[6] We approve the judgment of the Court of Civil Appeals wherein it reversed the judgment of the trial court and remanded the cause, with instructions as to the item of attorneys' fees, since it is peculiarly within the province of the Court of Civil Appeals to pass finally upon any question of fact, and since its holding is based upon a finding that there had been maladministration of the estate by the executors. But it cannot be said, and the Court of Civil Appeals evidently did not undertake to hold, as matter of law, that the item of attorneys' fees should not be allowed. Upon another trial the trial court will pass upon such claim in light of all the evidence, and if he thinks proper will make such allowance as in his judgment would be fair and reasonable.

[7] Plaintiffs in error's first assignment presented to us attacks the judgment of the Court of Civil Appeals for affirming the judgment of the trial court without having allowed them a credit for a sum amounting to $4,474.52, held by them as executors and turned over, upon order of the court, to the receiver appointed in this case. We overrule this assignment, for the reason no exception was filed to the master's report complaining of his failure to credit them with this item. In the absence of such exception, the master's statement of the account is conclusive, and

neither the trial court nor any appellate court can inquire into the matter and adjudicate otherwise. That the report of an auditor is conclusive upon the parties as to all matters and items therein not specially excepted to appears to be well settled. Camden v. Stuart, 144 U. S. 104, 12 S. Ct. 585, 36 L. Ed. 363; Moore v. Waco Association (Tex. Civ. App.) 45 S. W. 974; Eagle Manufacturing Co. v. Hanaway, 90 Tex. 581, 40 S. W. 13; Harper v. Marion County (Tex. Civ. App.) 77 S. W. 1044. But, in view of the court's judgment expressly reserving this item to be disposed of in the final judgment to be rendered on termination of the receivership, it has not been adjudged in such way as to prejudice the rights of either party, and the trial court should, and will, upon such final decree, make fair and equitable disposition of the same according to the right of the whole case between the parties. Indeed, the trial court appears specially to have had this in mind in making the reservation he did.

As to matters presented in the application and not here specially discussed, we, of course, approve the conclusions of law reached by the Court of Civil Appeals. Whether the question is to be determined by the doctrine of equitable conversion, sometimes called notional conversion, or whether, as insisted by one of counsel for plaintiffs in error, that doctrine is not applicable in Texas, but the matter should be determined by the construction of the will in the particular of its vesting title to real estate in the executors, we approve the conclusion of the Court of Civil Appeals that the power of disposition did not reside, at all events, in the executors, but at most the power to convey the real estate was intended to be exercised at the discretion of the executors for the best interests of the estate. At best, the doctrine of equitable conversion is but an artificial, arbitrary device for ascertaining the intention of a grantor or a power, and is helpful in many instances in executing that intention. But the always all-controlling intention, however discovered, is the primary purpose of every inquiry. We think the will in this case has been rightly appraised by the judgment of the Court of Civil Appeals.

[8] In support of the Court of Civil Appeals' holding that taxes accruing against unproductive property of the estate during the existence of the life tenancy should be chargeable to the life tenant may be cited the cases of Morton's Estate, 74 N. J. Eq. 797, 70 A. 680; Martin v. Kimball, 86 N. J. Eq. 10, 432, 96 A. 565, 99 A. 1070; Fleet's Estate, 117 Misc. Rep. 273, 192 N. Y. S. 206; McDannel v. Weddige, 79 Pa. Super. Ct. 494. The principle is that one who takes a life estate in the property of a decedent elects to take as a whole with the benefits of the income and profits, and under the corresponding burdens of the current expenses such as taxes, repairs, and other upkeep, viewing the estate as a whole.

For the reasons given, we recommend that the judgments of the district court and of the Court of Civil Appeals be reversed, and the cause be remanded to the trial court for another trial in a manner consistent with this opinion and the opinion of the Court of Civil Appeals as herein approved.

CURETON, C. J. The judgments of the Court of Civil Appeals and district court are both reversed, and the cause is remanded to the district court for another trial in a manner consistent with the opinion of the Commission of Appeals, and the opinion of the Court of Civil Appeals in so far as same is not inconsistent with that of the Commission of Appeals.