## POLLY FAIRMAN'S APPEAL FROM PROBATE.

30   205
f73   645

It is improper for a court of probate, in settling an administration account, to allow a gross sum for "expenses of settling the estate," without any items either in the account or in a schedule annexed to it.

Tombstones are properly a part of funeral expenses, and under the advice of the court of probate a reasonable sum may be used by the administrator for the purpose of procuring them, even though the estate be insolvent. In the absence of any statute on the subject the propriety of obtaining them and the amount to be expended may properly be left to the court of probate.

Whether taxes due from a deceased person at the time of his death are properly *debts* of his estate: *Quere.*

Where land was devised with a condition that the devisee should pay all the "just debts and funeral expenses" of the testator, and the devisee accepted the devise, it was held that it was his duty to pay the taxes due from the testator at the time of his death, and also to procure suitable tombstones for his grave.

Defense of a contested will by the executor.

APPEAL from the decree of a probate court allowing the administration account of Carlos B. Booth, as executor of the will of Oliver Peck. The appellant was a legatee and one of the heirs at law, and in the latter capacity was interested in

the residue of the estate, which by the failure of a bequest
of it fell to the heirs at law.

The will, after giving to the widow of the testator a life use
of all his real estate, proceeded as follows :—"I give and
devise to Carlos B. Booth all my real estate situated in said
Newtown, except the tract of woodland on Botsford's Hill, con-
veyed to me by Charles B. Nichols, to him and his heirs
forever, subject to the said life estate of the said Polly Peck,
and upon condition that he pay at my decease all my just debts
and funeral expenses." The will and a codicil annexed con-
tained sundry other bequests and appointed the said Carlos
B. Booth executor.

The will was proved in the probate court on the 2d day of
June, 1857, and on the 12th day of January, 1860, the
executor's account was settled and allowed in the court of
probate, in the following form :—

Carlos B. Booth, Executor, in account with the estate of
    Oliver Peck, deceased.                                    Dr.

To the amount of inventory of personal estate, as
    rendered,    -     -     -     -     -    $1,629.28
   "    "     "      "     additional,    12.50
Interest on bank book and notes,    -    -    56.21
Cost on Fairman's appeal,    -     -     -    90.00

                                    $1,787.99
                                      Cr.
By amount of Legacies paid,    -     -    $1,100.00
By expenses of settling estate,    -    -    -    567.75
By amount of Cash on hand,    -    -    100.00
  "     "     Goods on hand,    -    -    -    13.25
  "     "     Loss on sale of personal estate,    1.99

                                    $1,787.99

Booth accepted the real estate devised to him, and was en-
joying the same at the time of the settlement of the account.
In the charges allowed against the estate as a part of the item
of $567.75, were the sum of $260.95 for counsel fees in de-
fending against an appeal from the probate of the will, the

sum of $15 for tombstones for the testator's grave, the sum of $9.88 for taxes that had accrued in the life time of the testator, and the sum of $234 for money lent to the testator in his life time by the said Booth. The fact that these sums were a part of the $567.75 was shown by testimony, but did not appear from the account or from any schedules annexed to it. At the time of his decease the testator held the note of the said Booth for the sum of $227, which was given previous to the making of the will, and which amounted at the time of the settlement of the account to $325.74. This note the said Booth had inventoried in full as a part of the assets of the estate. The money lent by Booth to the testator was lent after the giving of the note. Nothing further appeared with regard to the item of $260.95, than that it was allowed as counsel fees in the suit referred to.

The above facts were found by the superior court and the case reserved for the advice of this court.

*Belden*, for the appellant, contended that the allowance of the $567.75 in gross, with nothing to show the items of which it was composed, was improper and ought not to be sustained; (*Swan* v. *Wheeler*, 4 Day, 137;) that the expenses of defending the will could not be charged to the estate; (*Leavenworth* v. *Marshall*, 19 Conn., 408;) that the taxes which accrued before the testator's death were debts of the estate, and as such were to be paid by Booth out of his own funds as a condition of the devise to him; that the tombstones in the same way were to be paid for by him as a part of the funeral expenses which the devise required him to pay; and that the $234 which had been charged to the estate by Booth as the amount due him for money loaned, was a debt of the estate which he was bound in like manner to pay himself, and which, being due to himself, became extinguished by his acceptance of the devise, the same not being a set-off against his own debt to the testator by his note, since they had no connection, and since he had himself inventoried the note as a part of the assets of the estate.

*Hawley* and *Treat*, for the appellee, contended that the claim of Booth for money loaned to the testator was not to be regarded as a debt of the estate, since it was more than balanced by the claim of the estate on Booth upon the note given by him to the testator, the one claim being a lawful off-set against the other and the difference alone constituting the debt; (*Hosmer* v. *Merriam*, 1 Root, 427 ;) that the taxes due from the estate were not properly a debt of the estate, taxes not being founded upon the agreement of the party or growing out of a legal consideration like ordinary legal obligations, but being imposed by law, and being wholly unlike other claims as to the mode of their collection; (*Ives* v. *Lynn*, 7 Conn., 505 ;) that the tombstones were no part of the " funeral expenses ; " (2 Wms. on Exrs., 636 ; *Mc Glinsey's Appeal from Probate*, 14 Serg. & R., 64 ; *Paice* v. *Archbishop of Canterbury*, 14 Vez., 364 ;) and that no facts appeared from which the court could judge whether the executor acted improperly in paying the expenses of defending the will and whether the same ought or not to have been allowed him in the account, and that it was not found that the sum was in itself unreasonable, the whole burden as to both which points rested upon the appellant.

BUTLER, J. It was determined by this court in *Swan* v. *Wheeler*, 4 Day, 137, that an administration account consisting of a sum in gross, without items or explanation, should not be allowed. The reasons for requiring that all distinct items should clearly appear by themselves, so that they could be intelligibly examined by the parties in interest, are there fully stated. That decision has been uniformly recognized and followed upon the circuit, and generally conformed to by the courts of probate. The propriety of the rule is well illustrated by this case. This executor, in the item of " expenses of settling the estate," charged in gross at $567.75, embraced a debt of a considerable amount claimed to be due himself, and other items which it clearly belonged to him to pay, which formed no part of the expenses of settling the estate. This may have been honestly and mistakenly done ; but it has a

suspicious appearance, and shows clearly the importance of full and detailed schedules, embracing every distinct item of expenditure, so that a fraudulent concealment in relation to any item shall be impossible, and an intelligible examination of the account may be readily and reliably made. On this ground, if upon no other, we should reverse the decree appealed from.

But there were items embraced in that general charge which the executor was bound to pay out of his own estate, by the conditions attached to the devise which he had accepted. He was bound to pay the taxes. Whether technically a debt or not is immaterial. They constituted one of the claims which the testator was under obligation to pay at the time of his decease, and it was clearly his intention that the executor should pay all such claims. The manner in which he disposed of his estate, taken in connection with the amount and nature of it, shows that he intended that it should not be lessened by any claims or demands, but that the executor in taking his real estate should assume and pay them, and leave his personal estate untouched for the legatees.

We think the tombstones also should be considered a part of the " funeral expenses." They are no necessary part of the expenses of settling the estate. The estate can well be settled and closed without procuring them. But they seem to be connected with the burial, and to properly belong to that part of the expenses. Expenditures for digging and filling the grave certainly are, and the stones placed at each end of the grave are so placed to mark, define and protect it. The inscription on the stone may be more extended than is necessary for that purpose, but that is the principal object. They are not set up at the time of the burial, because not then prepared, but they are when set up fixtures of the grave, as bounds and fences are fixtures of lands, and the sums paid for them should be considered a part of the funeral expenses. But we do not intend to hold that an administrator or executor may procure them in all cases at the expense of the estate. If the estate is solvent we think he should consult the heirs, and have the advice and approbation of the court of probate.

If it is insolvent they certainly should not be obtained without that advice and approbation. In the absence of specific legislation, the propriety of obtaining them, and at what expense, may properly be left to that court.

The facts found are not sufficient to enable us to determine whether the sums paid in defending the will are properly chargeable against the estate; nor whether the money loaned and charged on book was so had as to constitute an offset against the note held by the testator, or to be considered as a debt which it was the intention of the testator that the executor should cancel if he accepted the devise.

The decree must be reversed and the whole account must be remanded to the court of probate for a new, full, and careful investigation in relation to all the disputable items embraced in the charge of $567.75 as expenses of settling the estate.

In this opinion the other judges concurred.