# Frances Phillips v. Fred Duckett.

## Gen. No. 4,290.

1. DISTRIBUTION OF ESTATE—*how, made.*   Where a testatrix provides in her will that "all that shall remain of $700 after my just indebtedness and funeral expenses are paid" shall be divided equally between certain of her children, share and share alike, it is improper for the executor in making up his report to charge items of indebtedness paid by him to the general estate; such disbursements should be charged to the $700 fund and the balance remaining, if any, distributed to the beneficiaries designated in the above mentioned clause.

2. RELEASE—*when appointment of debtor as executor does not operate as.*   Where a testator appoints his debtor as executor of his will, he does not thereby, under the law of this state, release the debt, unless such intention is declared in his will; and no such intention can be deemed to appear where the debt did not exist at the time of the execution of the will.

3. EXECUTOR'S DEBT—*status of.*   Where a debtor of the testator qualifies as executor, pursuant to appointment in the will, the amount of his debt to the estate does not immediately become cash in his hands, but the debt continues due from him to the estate, and where represented by an interest-bearing obligation, such interest continues to run until he reports cash in his hands ready for distribution and secures the court's approval of such report, or until he actually disburses the same for the estate in a manner which the court approves.

4. EXECUTOR'S DEBT—*how amount of, determined.*   A court of probate has power, either with or without the appointment of a special administrator to defend on behalf of the estate, to determine by a hearing the amount due from an executor to the estate which he represents, where such matter is a subject of dispute.

5. MONUMENT—*when expenditure for a, justified.*   An expenditure by an executor of $150 from the estate funds for the erection of a monument to the deceased, is sustained in this case, the estate being solvent and five of the six heirs consenting thereto.   It is, likewise, held by the court that a reasonable expenditure for such a purpose constitutes a legitimate funeral expense.

6. COSTS—*apportionment of.*   Where litigation largely results from personal claims advanced by an executor which are not sustained, it is proper to require such executor personally to pay a portion of the costs of such litigation.

Contest upon objection to executor's report.   Appeal from the Circuit Court of Livingston County; the Hon. GEORGE W. PATTON, Judge, presiding.   Heard in this court at the October term, 1903.   Reversed and remanded.   Opinion filed March 14, 1904.

SALMANS & DRAPER and R. S. McILDUFF, for appellant.

A. C. NORTON, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of
the court.

The last will of Mrs. Sarah Munhall, deceased, gave to
her children, Mary Duckett, Cornelia Jones and Samuel A.
Munhall, " all that shall remain of seven hundred dollars
after my just indebtedness and funeral expenses are paid,
to be equally divided between them, share and share alike."
It also gave to her six children, the three above named and
Thomas T. Munhall, Fredericka Krack and Frances Phil-
lips, the proceeds of the sale of her house and lot in the
village of Forrest, to be equally divided between them, with
directions for the sale of said house and lot; and also gave
them the income from certain royalties from a coal mine
in Scranton, Pa.  If her personal estate, exclusive of the
royalties, exceeded $700, the excess was intestate estate
and passed to her six children as heirs at law.   The will
was filed April 1, 1897, and on May 6, 1901, Fred Duckett,
the executor, filed his first and final report.   In that report
he indicated that at the death of Mrs. Munhall there was
but $545 unpaid upon a note she held against him for the
principal sum of $700 and he treated that note as the $700
fund referred to in the will, and as bearing no interest
after his appointment, and reported he had already divided
part of that sum between Mrs. Duckett, Mrs. Jones and
Samuel and indicated they were entitled to the rest of it,
and he did not deduct from that fund the debts and funeral
expenses.   Those he charged against the general estate
which the six children were to share.   The effect was to
give Mrs. Duckett (the executor's wife), Mrs. Jones and
Samuel, more than they were entitled to by the will, and
improperly to decrease the sum to be divided between the
six children.   The executor also caused a monument to be
erected at the grave of deceased at a cost of $150 and
charged it against the general estate.   The executor also
ignored $100 of funeral expenses which it is claimed Mrs.

Jones paid out of moneys of deceased. Mrs. Phillips filed objections to the report, questioning it in the above respects, and claiming that the costs of the monument was not a proper charge against the estate, and that if it was it should be charged against the $700 fund, and questioning that part of the report which asserted only $545 was unpaid upon the note the executor owed deceased. The County Court ordered certain expenditures charged against the $700 fund, and overruled the objections in all other respects. Mrs. Phillips appealed to the Circuit Court from so much of the order as was adverse to her. The Circuit Court ordered certain other items charged against said $700 fund and overruled the rest of the objections. Mrs. Phillips now appeals to this court from so much of said last order as is adverse to her.

Under the provisions of the will, if the total sum of the debts and funeral expenses did not amount to $700 the difference between the amount of the debts and funeral expenses and $700 was to be equally divided between Mrs. Duckett, Mrs. Jones, and Samuel, provided, of course, there was enough estate to pay it without resorting to the house and lot and the royalties, which were disposed of by other paragraphs of the will. The executor erred in not applying the debts and funeral expenses against the fund of $700 and this was partly corrected by the lower courts. But the proof shows Mrs. Munhall had on hand just before her death $100 which she had saved for her funeral expenses. At her death she was with Mrs. Jones in Chicago. The burial was at Forrest, in Livingston County, the old home of deceased. Shortly before her death Mrs. Munhall handed this money to Mrs. Jones, and the latter expended it in paying that part of the funeral expenses necessarily incurred in Chicago. Though that money did not pass through the executor's hands, yet it was part of the estate of deceased, and was paid out upon her funeral expenses, and that $100 of funeral expenses should also have been deducted from the fund of $700 in ascertaining what amount, if any, was by the will required to be divided between Mrs. Duckett, Mrs. Jones and Samuel.

The estate holds a note against Fred Duckett, for the principal sum of $700, dated August 4, 1894, due one year after date and bearing interest at seven per cent per annum, upon the back of which several small payments are endorsed.   The executor claims, first, that at Mrs. Munhall's death he owed but $545 upon this note, and second, that from the date of his letters of executorship he was not subject to interest thereon.   The court below sustained the executor in these positions.   The endorsements upon the back of the note, and the evidence of a small payment by Duckett to Mrs. Munhall not long before her death, which was not endorsed, and of small monthly payments by him for her upon a mortgage debt she owed a building and loan association, by no means reduced the amount due at her death to $545.   The proof appears to show but little more than enough payments to cover the interest.   We are of opinion the court should have sustained the objection relating to the amount due the estate on that note.   At common law, if a testator appointed his debtor the executor of his will, he thereby released the debt, at least at law, though equity would compel him to pay, if necessary, to satisfy creditors.   Wentworth on Executors, chap. 2 ;   2 Woerner's American Law of Administration, sec. 311. That rule of the common law was abrogated in this state at least as early as the act of 1829 relating to wills, section 11 of which provides that where a testator appoints his debtor to be his executor such appointment shall not operate as a release or extinguishment of any debt due from such executor to such testator, unless the testator shall in such will expressly declare his intention to devise, bequeath or release such debt; nor even then unless the other estate of the testator is sufficient to discharge his debts.   The same provision was embodied in section 12 of the chapter on Wills, in the revision of 1845, and in section 19 of our present statute upon that subject.   Mrs. Munhall's will contains no language indicating any intention to release any part of this debt, and indeed as the note was given long after the will was executed it could not then have been her intention

to release a debt which did not then exist. Updike v. Tompkins, 100 Ill. 406. The fact that the executor cannot sue himself can no more operate to release the unpaid interest accruing on his note after he is appointed, than to release the principal, or unpaid interest accruing before his appointment. In some states it is held that where the right to demand and the obligation to pay co-exist in the same person, the law presumes instantaneous payment and extinguishment of the debt. This is a legal fiction and usually is contrary to the fact. One result of such a rule is to make the sureties upon the bond of an insolvent executor or administrator responsible for his debts to the estate. Other states have refused to adopt this fiction, by which the liability of the executor or administrator to the estate is converted into ready cash in his hands as soon as he gives bond and receives his letters. The authorities pro and con are cited in the notes to sections 311 and 512 of 2 Woerner's American Law of Administration. We are not advised that the question has been passed upon by our Supreme Court. In the absence of any authoritative decision in this state, we are of opinion that fact should prevail rather than fiction, and that an executor or administrator who owes his estate an interest-bearing obligation should be required to pay interest thereon till he reports the cash payment thereof as in his hands ready to be distributed by the court's order, and secures the court's approval of such report, or till he actually disburses the money for the estate in a manner which the court approves. If, as here, he claims credits not endorsed upon the note, he can at any time petition the court to appoint a special administrator to represent the interests of the estate in relation to that asset, and when such appointment is made, a hearing can be had in which the executor will represent his own interests and the special administrator will represent the estate, and the amount due upon the note can there be judicially determined. May v. Leighty, 36 Ill. App. 17. Indeed the County Court has jurisdiction to determine such questions without the appointment of a special administrator, it being its duty to

scrutinize such matters and to do whatever is necessary to protect the interests of all, including the appointment of a special administrator when necessary. Emerick v. Hileman, 71 Ill. App. 512, and 177 Ill. 368. As the note was past due, if the executor desired to pay it, and thus relieve himself of liability for further interest, he could have got the money ready to pay the principal and interest to that date, and then filed a report and charged himself with that sum, thus submitting it to the court for directions as to its disbursement, and the approval of the report when he had the money actually in hand for the estate would no doubt relieve him from liability for further interest. No doubt he could in other ways obtain a proper order showing the money paid in for the estate, and the note discharged.

As to the allowance of $150 for a monument for deceased, Mrs. Phillips claims, first, that any allowance for a monument was improper, and second, that if such an allowance was proper it should have been charged against the $700 fund. The court below found that Mrs. Phillips agreed with the other heirs that a suitable monument should be erected out of the funds of the estate, and requested the executor to attend to it. Without setting out the details of the testimony on that subject, we think it sufficient to say that a careful examination of the evidence shows that it does not support that conclusion. All it does show as to Mrs. Phillips is that something of an indefinite character was said on the subject in her presence, and that she made no reply, or no definite reply, and that plans for several different monuments were sent to her and she returned them without comment. There is no proof that she said or did anything which can be construed into an agreement or a request, or which would create an estoppel against her. Whether it would have been wise for her to acquiesce in the wishes of her brothers and sisters, is not a matter for our decision. But it does not follow that it was error to allow the cost of the monument as a credit to the executor. In Foley v. Bushway, 71 Ill. 386, and Morgan v. Morgan, 83 Ill. 196, such charges were rejected because the

contract for the monument was made by the widow or the heirs, and not by the administrator as such.   In Little v. Williams, 7 Ill. App. 67, a charge for a tombstone was rejected because the estate was utterly insolvent, and the expenditure was in disregard of the rights of the general creditors and even of those who had claims arising out of the last illness of the deceased.   But in Spire v. Lovell, 17 Ill. App. 559, this court (speaking through the same judge who wrote the opinion in Little v. Williams, *supra*,) held that where the rights of creditors are not jeopardized, and the sum ($210 in that case) expended by the administrator or executor for a tombstone is not extravagant, but reasonable, in view of the station in life of the deceased and the value of the estate left by him, and the article is reasonably worth the price paid, then a credit therefor should be allowed.   This view is supported by 2 Woerner's Am. Law of Administration, sec. 358, Pistorius' Appeal, 53 Mich. 350, and Crapo v. Armstrong, 61 Iowa, 697.   It would seem as if, though decedent left insufficient estate to pay her debts, she should be entitled to a modest tombstone to show whose remains are there buried; but that we are not called upon to determine, for this estate is solvent.   It may be a decent headstone might have been obtained in this case for less money, but that is not the ground of the objection, and after the local courts and five of the six children have approved the expenditure we would not be warranted in disturbing their conclusion under the facts in this case.

But although the allowance of such a credit must depend upon the sufficiency of the estate to pay creditors, as well as upon the other considerations above mentioned, yet under the foregoing authorities and our statute for the classification of claims, we think it clear the allowance when made must be as a funeral expense.   In Spire v. Lovell, *supra*, this court said:   "The erection of a suitable headstone at the grave of a deceased person may properly be considered as a part of his funeral expenses," the printed volume giving that sentence incorrectly.   Woerner, in section 358, above cited, says that funeral expenses are

held to include suitable grave-stones and monuments, and are allowable under the conditions already referred to. If the executor had not paid the person who erected this monument, but had left him to file and prosecute a claim against the estate therefor, it is only as a first-class claim for funeral expenses that it could have been allowed. It follows that it should be treated as paid out of the $700 fund, in determining what, if anything, remained of said fund to be paid to Mrs. Duckett, Mrs. Jones and Samuel.

The Circuit Court ordered one-half the costs in that court paid out of the $700 fund and one-half out of the general fund of the estate. As this litigation largely relates to the failure of the executor to charge the debts and funeral expenses against the $700 fund as by the will directed, and to his claim that he owes the estate but $545 upon his note, in both which respects we hold him in error, we think he should personally pay one-half the costs in the Circuit Court and in this court, and the other half of said costs should be paid by him in due course of administration out of said $700 fund.

The portions of said order appealed from are reversed and the cause is remanded for further proceedings not inconsistent with this opinion. The appellee will be adjudged to personally pay one-half the costs of this court, and to pay the remaining one-half thereof out of said $700 fund in due course of administration.

*Reversed and remanded.*