No. ——

First Circuit

SUCCESSION OF DUNN

OPPOSITION OF FIZER AND ANDREWS

TO FINAL ACCOUNT

(June 7, 1927. Opinion and Decree.)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Executors and Administrators—Par. 129.—Obligations—Par. 31.—Successions—Par. 65.**

The succession of a party who was given board and lodging for years previous to his death will be ordered to pay the value of those services although no price had been agreed upon, the party giving board and lodging not being presumed to have undertaken the burden without expecting payment.

2. **Louisiana Digest—Successions—Par. 65, 68.—Executors and Administrators—Par. 136.**

In view of Civil Code, Article 3, and custom the expenditure of a reasonable sum for the purpose of marking the grave of the deceased has acquired the force and effect of law and the sum necessary will be ordered paid out of the succession.

Appeal from the District Court, Parish of East Feliciana. Hon. Charles Kilbourne, Judge.

Action by Succession of V. H. Dunn; opposition of Mrs. Ruth Currie Fizer and of Mrs. Catherine A. Andrews to final account. Henry D. Reiley, administrator.

There was judgment for the opposition and administrator appealed.

Judgment reversed.

H. H. Kilbourne, of Clinton, attorney for Henry D. Reiley, administrator, appellant.

George J. Woodside, of Clinton, attorney for Mrs. Ruth Currie Fizer and Mrs. Catherine A. Andrews, opponents and appellees.

ELLIOTT, J. V. H. Dunn departed this life on April 30, 1920, intestate, leaving two sisters, Mrs. Fizer and Mrs. Andrews, the opponents herein and nephews and nieces, descendants of John Dunn, a brother previously deceased, and of Mrs. Reiley, who was the wife of George J. Reiley, a sister, also previously deceased, as his sole heirs. He was a bachelor and left no ascendants nor descendants. His total estate was inventoried at $2,320.85. According to the final account, the payment of his funeral expenses and debts required all the assets of his estate, except a small tract of land which was tendered on the account to the heirs. Among the debts and expenses charged on the account was one for board and lodging of the deceased, amounting to $1,241.46, in favor of Henry D. Reiley, administrator, and an item of $65.00 for a monument marking the decedent's grave. Mrs. Ruth Currie Fizer and Mrs. Catherine A. Andrews, surviving sisters of decedent, opposed the charge for board and lodging and Mrs. Andrews in addition opposed the item of $65.00. Their oppositions were sustained and the administrator appealed. None of the other heirs opposed the account, therefore as to all the other heirs the account was approved and homologated as filed. Mrs. Fizer not having opposed, except as above stated, the account was in all other respects homologated as to her and Mrs. Andrews not having opposed, except as above stated the account was in all other respects homologated as to her. The inventory and the evidence shows that V. H. Dunn owned a small farm of 66½ acres of land and 3 mules, 1 horse, 20 cattle, 1 wagon, Ford automobile, saddle, gun and pistol, but no furniture nor household goods of any kind and no farming implements, such as plows, etc. The fact that he did not own any property of the kind mentioned tends to support the testimony of Henry D. Reiley, that the decedent, his uncle, came to him in April, 1915, and asked him if he could live and stay at his place, of which Henry D. Reiley was the manager and which the evidence shows was the Blairstown Plantation. That his uncle said to him in making the request, that he would pay what he could or was right and that his answer was that he certainly could. That his uncle, acting on this arrangement, took up his residence with him and lived with him about eleven years, the arrangement continuing until his death. That his uncle, at times spoke to him about their account, expressing his inability to pay. That some times his uncle was in shape to have paid and at other times was not. That for the last three years of his life his uncle in talking to him always said he was unable to pay and never paid nor contributed anything by service or otherwise as his living from the time he commenced until his death. That he charged for only three years because he knew a longer time would be opposed on the ground of prescription.

The arrangement between Henry D. Reiley and Mr. Dunn at the beginning is supported by the testimony of John A. Reiley, a brother. C. L. Munson, an attorney, testified that he stopped at Blairstown during the fall of 1923 and requested of Mr. Dunn permission to stay all night. That Mr. Dunn replied, "I can't tell you. Henry runs this place. I just board. You will have to see him (Henry)."

Mr. Dunn's bank balance at intervals during the last three years was produced

and shows that he had on hand different amounts, ranging from $92.87 to $1,005.56. He could, we suppose, have used these sums for the purpose of paying his board and lodging, but there is no evidence that he paid anything. His reluctance for the last three years may be explained and accounted for by his bad health and probable inability to look after his interests, such as he had and the uncertainty as to his future needs. He made at least one trip to New Orleans and a number to Baton Rouge to secure treatment. According to Henry D. Reiley, he expressed a wish during his last illness to make a will in his favor, but it was not done.

An uncle by marriage of Henry D. Reiley testified that the evening after the death of Mr. Dunn, he asked Henry D. Reiley, in the presence of his aunt, wife of the witness, if his uncle owed him for board and that Henry D. Reiley replied, "not one cent." That later the same evening, in further conversation about the matter, Henry D. Reiley said that his uncle would buy what he wanted and bring it here. Henry D. Reiley recalled and re-examined as to these remarks testified that the witness or his aunt remarked to him that they had heard that he had forced his uncle to pay board monthly, whether he was hard up or not and that his reply was that his uncle had never paid him a cent.

Henry D. Reiley, questioned about this matter on his direct examination had answered as follows:

"Q. Was anything said about buying by Mr. Dunn and bringing some things to keep up the house supplies?
"A. No. Not that I know of. He bought some things like a loaf of bread or fruit at times, but no contributions toward running the house."

The witness further testified that Henry D. Reiley had informed him and his aunt, wife of witness, that his uncle H, meaning V. H. Dunn, had asked him during his last illness to draw up a will and wanted to give him all his property and that he had answered his uncle, saying not to do that; to will it to papa, meaning George J. Reiley.

Opponents argue that Henry D. Reiley would not have suggested to his uncle that he will his property to George J. Reiley, father of Henry D. Reiley, if his uncle had owed him, but would have acquiesced in his offer to make a will in his favor. This evidence introduced by opponents as well as the other statements which they claim that Henry D. Reiley made to the effect that his uncle did not owe him a cent and had bought what he wanted and brought it there, has this weakness: Their witness could have been honestly mistaken as to what Henry D. Reiley said or intended to say, but Henry D. Reiley could not have been mistaken in what he said. What he said in denial is either true or wilfully false. It is also improbable that Mr. Dunn bought his own food supplies, because if he had done so, the party from whom he had bought was evidently within reach and there was no showing made along that line. The testimony, direct and circumstantial, establishes with reasonable certainty that V. H. Dunn and Henry D. Reiley entered into the arrangement testified to by the latter and that it continued until the death of V. H. Dunn. Their arrangement contemplated and V. H. Dunn intended from the beginning to pay for his board and lodging and Henry D. Reiley expected payment; but no agreement as to amount was ever reached and nothing was ever paid. The case comes fairly within the scope of the reasons on which payment was ordered in Succession of Fowler, 7 La. Ann. 207; Succession of Krekeler, 44

La. Ann. 726, 118 South. 35; Daunenhauer vs. Succession of Brown, 47 La. Ann. 341, 16 South. 827, and Succession of McNamara, 48 La. Ann. 45, 18 South. 908. A party will not be presumed to have undertaken a burden of this kind and duration without expecting payment, as might be done if the party taken had been his ancestor.

The opposition of Mrs. Fizer and of Mrs. Andrews to the charge for board and lodging should have been overruled. The item of $65.00 paid by the administrator for a monument, marking the grave of the decedent is opposed by Mrs. Andrews.

Henry D. Reiley testifies that this expenditure was requested by Mrs. Andrews. There is no testimony to the contrary.

The expenditure of a reasonable sum out of the estate of a party who has died for the purpose of marking his grave is authorized by a custom, so long existing that it has acquired the force and effect of a law. Civil Code, Article 3. The opposition of Mrs. Andrews to a charge of $65.00 for such a purpose in this case should have been overruled.

For these reasons the judgment appealed from to the extent that same sustains the opposition of Mrs. Ruth Currie Fizer and of Mrs. Catherine A. Andrews to the charge of $1,241.48 on the final acount in favor of Henry D. Reiley for the board and·lodging of V. H. Dunn, and that of Mrs. Catherine A. Andrews to the charge of $65.00 for a monument marking the grave of V. H. Dunn, is annulled, avoided and set aside and said oppositions are both rejected. The case is remanded to the lower court for further proceedings, in the settlement of the estate as the law provides. The oppo-

nents to pay the cost of this appeal and the cost of their opposition in the lower court.