No. 34,186

In re Estate of James J. Earnest, Deceased. (W. A. EARNEST, FRED G. STAMBACH and J. G. EARNEST, etc., *Appellees*, v. VIOLA W. RUPPENTHAL, Coadministratrix, *Appellant*.)

· (88 P. 2d 1048)

Opinion filed April 8, 1939.

*J. C. Ruppenthal*, of Russell, for the appellant.

*Jerry E. Driscoll* and *Harold W. McCombs*, both of Russell, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal by a coadministrator from a judgment of the district court holding that a claim for a tombstone purchased by the coadministrator should have been allowed against the estate of the deceased by the probate court.

The trial court made findings of fact which were as follows:

"1. That James J. Earnest died intestate and a bachelor, a resident of Luray, Russell county, Kansas, on the 29th day of June, 1936; that he left surviving him as his sole and only heirs at law, thirty-nine collateral heirs, being nephews and nieces, and grandnephews and grandnieces of the deceased, the parents and brothers and sisters of said James J. Earnest having preceded him in death. Three of these heirs a one-eighteenth interest in said estate; four a one twenty-fourth interest, six a one thirty-sixth interest; six a one forty-second interest; eight a one forty-eighth interest; ten a one-sixtieth interest and two a one eighty-fourth interest.

"2. That on the 3d day of July, 1936, Viola W. Ruppenthal, one of the heirs, was duly appointed and qualified as the administratrix of said estate; that thereafter, and on July 10, 1936, a motion was filed by W. A. Earnest and other heirs of said estate, praying for the removal of Viola W. Ruppenthal as administratrix of said estate, and that upon hearing of said motion on the 29th day of July, 1936, J. G. Earnest, also an heir of said estate, was appointed

by the court and duly qualified as coadministrator of said estate, and that thereafter said estate was administered jointly by Viola W. Ruppenthal and J. G. Earnest.

"3. On the 24th day of July, 1937, before the closing of said estate and before any application therefor had been made to the court, W. A. Earnest, one of the heirs of said estate, filed a petition alleging that the administrators of said estate had neglected or refused to erect a suitable marker or memorial at the grave of James J. Earnest, deceased; that there were sufficient assets in the hands of the administrators to provide or purchase such marker or memorial, and that the probate court should set aside a sum of money from the funds then in the hands of the administrators, in a sum not less than $300 or more than $500 for such purpose.

"4. Final report of personal estate was filed in probate court September 21, 1937, with detailed account, praying for approval, finding of heirs, and order of distribution and discharge. Notice was duly published four weeks; setting October 22, 1937, as date of hearing. Hearing was by the court passed over to October 23, 1937, when both administrators and counsel for each were present.

"5. On October 23, 1937, said final report and petition for hearing before the probate court, the court approved the report as filed, determined the compensations, expenses and attorneys' fees of the administrators, found the heirs of said deceased, ordered the distribution of the net proceeds of the estate, amounting to $3,762.43, to the several heirs and discharged the administrators from further liability upon the filing of all vouchers for distribution to the heirs of said estate. Receipts from the administrators, their attorneys, and by the probate court for fees, were promptly filed. It appears that the receipt or vouchers from the heirs have not been filed.

"6. On october 23, 1937, the petition of W. A. Earnest, as mentioned in finding No. 3, came on for hearing before the probate court, the petitioner not being present or having notice of said hearing, and was by said court overruled. Upon reconsideration by the probate court on October 26, 1937 (W. A. Earnest being then present in person and by counsel), it was again overruled, from which later ruling said petitioner, on November 5, 1937, appealed to this court; said appeal also covered the order of the probate court directing the payment of legacies and ordering distribution.

"7. That on the 28th day of March, 1938, J. G. Earnest, as administrator of said estate, entered into a contract with Fred G. Stambach, of Osborne, Kan., for the purchase of a tombstone to be erected at the grave of James J. Earnest, deceased, at and for a total purchase price of $200; that on April 11, 1938, Fred G. Stambach filed his claim with the probate court of Russell county, Kansas, in the amount of $200 plus $4 sales tax, being the purchase price of one granite monument, previously contracted for by J. G. Earnest, administrator, which said claim was disallowed by the probate court on April 25, 1938.

"The claim filed by Fred G. Stambach was not verified as required by G. S. 22-709, but at the trial in this court (on appeal), said claimant appeared personally and testified as to the matters covered by this section. (*Dubbs v. Haworth,* 102 Kan. 603, 606.) The court finds that at the time of presentation and hearing of this claim of F. G. Stambach in the probate court, no monument

had been erected by him at the grave of the deceased, but the amount thereof had been determined through the order of J. G. Earnest, administrator, and said monument was erected during the last week of May, 1938.

"8. Thereafter, and on the 23d day of May, 1938, J. G. Earnest, coadministrator of said estate, and Fred G. Stambach, claimant, each appealed to the district court of Russell county, Kansas, from the order of the probate court, made on April 25, 1938, disallowing the Fred G. Stambach claim.

"9. That a majority of the heirs of James J. Earnest, deceased, have expressed themselves, both orally and in writing, as being in favor of the purchase of some suitable marker or memorial, to be erected at the grave of James J. Earnest, deceased; that the only opposition to the purchase of such marker, in either the probate court or the trial of this case in the district court, was Viola W. Ruppenthal, as coadministrator of said estate, and that none of the other heirs of said estate appeared at either of said hearings, for the purpose of contesting or making objections to such purchase. (That the expression of all but two or three of said heirs favorable to the purchase of a monument was made after the hearing on the petition of W. A. Earnest in the probate court on October 26, 1937.)

"10. That there is now in the hands of the coadministrators of said estate, and was on October 23, 1937, after the payment of all debts, charges and costs of administration, including attorneys' fees, and fees and expenses of the coadministrators, the sum of $3,762.43, for distribution to the heirs of said estate.

"11. That the tombstone purchased by J. G. Earnest, administrator, was erected at the grave of James J. Earnest, deceased, by Fred G. Stambach, a few days prior to May 30, 1938, and that the claim of Fred G. Stambach for the purchase price of said monument is just, due, and remains unpaid; that there is due and owing to said Fred G. Stambach from the estate of James J. Earnest, deceased, the sum of $204, after the allowance of all payments and offsets.

"12. W. A. Earnest, nephew, appellant, caused deceased to be buried in Cheyenne cemetery, Osborne county, about ten miles from Luray, and the expense was later paid from the estate at $516.35, including $390 casket and $100 steel box.

"13. After the probate court's ruling adverse to a memorial and after announcement at time of such ruling, of unwillingness of W. A. Earnest to consent to a memorial at less than $300 and after notice of appeal by W. A. Earnest and J. G. Earnest personally and as administrator were filed in November, 1937, the administratrix, Viola W. Ruppenthal, wrote most of the heirs to see whether they would severally make a contribution to be taken from their distributive shares and applied to pay on a tombstone. The probate court's rulings in October, 1937, had indicated that the court believed that no power existed, at least not without general consent of all heirs or substantially such consent, to provide a memorial at all to an intestate, and that had such power existed it was too late, as one year had elapsed from death and from appointment of administratrix and from notice of her appointment.

"14. About the third week of November, 1937, somewhat more than twenty heirs informed the administratrix that they severally would contribute $5 from their shares—some adding strongly 'No more.' Besides these, two or three

more spoke favorably to J. G. Earnest, but without setting the amount, or whether to be paid by them from their shares or to be allowed by the court. No adjustment was reached between the administratrix and the several appellants, despite these efforts.

"15. The cost of the monument erected at the grave of said deceased is a reasonable expense for the purpose of marking the grave, considering the financial condition of his estate."

The court made conclusions of law covering numerous contentions on legal questions presented by the parties. In view of the conclusion we have reached, it will be necessary to consider only one question. That question is whether an administrator, in the absence of testamentary direction, has the right or authority to purchase a tombstone for the grave of the deceased where none has been provided at the time fixed for the final settlement of a solvent estate. We think the question should be answered in the negative. An administrator ordinarily cannot bind the estate of a decedent by a contract which creates a liability not founded upon an obligation of the deceased. Nor do we find in the statutes of this state any authorization for the creation of such liability. We are reminded this court in *Nelson v. Schoonover*, 89 Kan. 388, 131 Pac. 147, said:

"The statute gives funeral expenses priority over all other demands against the estate of the decedent. (Gen. Stat. 1909, § 3515.) 'The expense of erecting a suitable monument over the grave of deceased is to be classed among the funeral expenses.' (4 Words & Phrases, p. 3008.)" (p. 394.)

In that case the will expressly provided for the erection of a tombstone. We do not think a monument or tombstone constitutes such a part of the funeral expenses of the deceased, if in fact any part thereof, as an administrator is authorized to incur. (*Morgan v. Morgan*, 83 Ill. 196; *Bauerle v. Long*, 187 Ill. 475; *De Proft v. Heydecker*, 297 Ill. 541; *In re Estate of Way*, 242 Ill. App. 459.) In the last case cited it was held:

"Executrix cannot bind the estate by contract creating a liability not founded on an obligation of the testator." (Syl. ¶ 2.)

The deceased died intestate. During his lifetime he made no provision for the erection of a tombstone. If the collateral heirs who will inherit his property, or others, are desirous of purchasing a tombstone out of their own funds, they are, of course, at liberty to do so, but the coadministrator was without right or authority to create a liability against the estate of the deceased for that purpose.

The appellant, Viola W. Ruppenthal, coadministrator, has requested a declaratory ruling on the question of whether G. S. 1935,

60-3327, is applicable to appeals to the supreme court by an administrator, and if so, whether that statute supersedes G. S. 1935, 60-3826, subdivision two, pertaining to the docketing of appeals in this court and eliminates the necessity of a docketing fee. No actual controversy on such questions appears to have been raised in the instant case and we shall not rule upon them now.

The judgment is reversed.

Hoch, J. (concurring in result only): I concur in the result reached in this case, but not in the reasons advanced in the opinion. The purchase and erection of a tombstone is, in my opinion, a legitimate part of funeral and burial expenses and a proper expenditure from the funds of an estate. The placing of a suitable stone to mark the resting place of the deceased is but decent recognition of the sentiments of a civilized society. This does not mean that it should not be subject to supervision of the probate court to prevent extravagant and unwarranted expenditure. The matter is well presented in the dissenting opinion of Justice Wedell, fortified by the decisions of many, if not of the majority of courts which have passed upon the question. One reason alone impels me to concur in the result reached by the decision. In the instant case there were two administrators, exercising equal powers. The tombstone was purchased by one of them alone. The coadministrator was opposed. I agree that the general rule is that where there are coadministrators it is not necessary for all to join in the ordinary acts of routine administration and that as to such matters the act of one coadministrator is treated as the act of all. It is also the general rule, however, and I think the sound one, that one of the coadministrators does not have independent power to incur debts and make contracts creating new obligations against the estate in matters not routine and wholly necessary. (24 C. J. 1186.) While the expenditure would have been proper and legitimate if concurred in by the coadministrator, I think it falls within the rule just stated and that one administrator, acting alone, could not bind the estate.

Wedell, J. (dissenting): There is no question concerning the fact that funeral expenses constitute a first-class claim against a decedent's estate. (G. S. 1935, 22-701.) True, our statutes contain no express authorization for the purchase of a marker or tombstone as an item of funeral expense. Nor do they make express provisions for other proper items of funeral expense. By the great weight of

authority a tombstone or monument, suited to the conditions of the estate, to identify and protect the remains of a deceased person is now regarded as highly proper and as a legitimate item of funeral expense regardless of express statutory sanction or testamentary authorization. And this is especially true where the estate is solvent as in the instant case. The deceased was a bachelor. He died intestate and collateral heirs were to receive the residue of his estate. The time for the final settlement of his estate had arrived and no provision had been made for even a marker for his remains. In my opinion the administrator had the right to purchase the tombstone. The reasonableness of its cost, $200, is not and, of course, could not well be questioned in view of the fact $3,762.43 remained for distribution among collateral heirs. In *Boyer et al. v. Cole, Administrator,* 16 Del. Ch. 445, it was said:

"Section 3372, Revised Code, 1915, provides for the payment of 'funeral expenses.' At common law, the cost of a tombstone for a deceased person was not a proper charge against his estate unless its erection was directed by will, especially if creditors were affected thereby (Halsbury's Laws of England, Vol. 14, p. 241); but a reasonable charge for a stone, depending, in part, upon the station in life of the deceased and the size of her estate, is now allowed as a funeral expense in both England and America. (24 C. J. 93; Woerner's Amer. Law of Administration, Vol. 2, §§ 357, 358, 359; *Kroll v. Close,* 82 Ohio St. 190, 92 N. E. 29, 28 L. R. A., n. s., 572; *In re Sheetz's Estate,* 2 Woodw. Dec. [Pa.] 407; *In re Weringer's Estate,* 100 Cal. 345, 34 Pac. 825; *Fairman's Appeal,* 30 Conn. 205; *Phillips v. Duckett,* 112 Ill. App. 587; *Hancock v. Padmore,* 1, B. & Ad. 260, 109 Eng. Rep. 783.) This rule applies, even though the estate be insolvent, though the expenditures are more closely scrutinized and should be more moderate where a creditor is affected thereby. (Woerner's Law of Administration, §§ 358, 359; *Hancock v. Padmore,* 1 B. & Ad. 260, 109 Eng. Rep. 783; *Phillips v. Duckett,* 112 Ill. App. 587; 24 C. J. 93.)" (p. 447.)

See, also, 11 R. C. L., § 253, p. 226; 3 Schouler on Wills, Executors and Administrators, 6th ed., § 2762, p. 2391; *Seitz v. Engert,* 13 Cal. App. 2d 302, 56 P. 2d 1242; *In re Estate of McMath,* 209 Ia. 414; *Kennedy v. Parks,* 217 Ala. 323; *Pistorius' Appeal,* 53 Mich. 350; *Crapo, Ex'r, v. Armstrong,* 61 Ia. 697; *Lutz v. Gates, Adm'r,* 62 Ia. 513; *Estate of Andrew C. Barclay, Deceased,* 11 Phila. Rep. 123; *Succession of Dunn,* 6 La. App. 663.

Insistence upon moderation in such expenditures out of the estate of the deceased is well expressed in 2 Woerner's Amer. Law of Administration, 3d ed., § 360, as follows:

"But large expenditures for burials, disproportioned to the assets of an estate, should not be encouraged. If greater economy were insisted on, in

small as well as in great estates, many a widow and heir struggling under the privations of bitter poverty would have reason to be thankful for being prevented from wasting a substantial part of their means upon the fruitless pomp and ceremony of an extravagantly costly funeral. It should also be remembered that if the survivors sincerely desire to commemorate the merits of a departed spouse, father, or other relative, or one admired for his virtues, by the erection of an imposing monument, the offering should be their voluntary act; it loses its value and significance if paid for out of the decedent's estate." (p. 1195.)

The trial court found the expense of the tombstone was reasonable, considering the financial condition of the estate, and constituted a proper item of funeral expense. That the cost of the tombstone was reasonable is not denied. That such a marker or tombstone constitutes not only a highly proper, but also a legitimate item of funeral expense is supported by the overwhelming weight of authority. It follows the expense of such a marker or tombstone is a valid claim against the estate of a decedent to which the seller thereof may look for payment.

Since the court has seen fit to limit the opinion to the single question of whether an administrator has authority to purchase a marker or tombstone, it becomes unnecessary to deal with the further question of the effect of the objection to the purchase thereof by the coadministrator. For that reason I have not previously commented on that subject. In view, however, of the specially concurring opinion I may state, that in my opinion, the objection by a coadministrator to the payment of the cost of a tombstone out of the funds of the estate does not alter the law which makes a tombstone a legitimate item of funeral expense and therefore a valid claim against a decedent's estate.